525 So.2d 1 (1987)
Roger H. OGDEN and James E. Maurin-1981D, a Louisiana Partnership in Commendam
v.
BARBY JOINT VENTURE, d/b/a One Hour Moto-Photo.
No. CA 86 1177.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
On Rehearing April 19, 1988.
A. Michael Dufilho, Baton Rouge, for plaintiffs-appellees Roger H. Ogden and James E. Maurin-1918D, a Louisiana Partnership in Commendam.
Susie Morgan, Shreveport, for intervenors-appellants Mercantile Bank of Fort Worth and I.D. Walker III, d/b/a Walker Inv.
*2 Joan B. Parmelee, Baton Rouge, for defendant-appellee Barby Joint Venture, d/b/a One Hour Moto-Photo.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This is a suit in contract by a lessor against his lessee and two sub-lessees seeking money damages and recognition of a lessor's lien on property seized on the leased premises with a writ of sequestration. The lessor, lessee and sub-lessees entered into a consent judgment for $21,539.61, with interest thereon at the rate of 18% per annum from August 2, 1985, until paid, an attorney fee of 10% of the principal and interest due, all costs and recognition of the lessor's lien and privilege on the property seized on the leased premises, which property was ordered sold at a sheriff's sale with appraisal. The owner of certain photographic equipment and a foreign bank intervened in the proceedings asserting that the owner's photographic equipment was seized on the leased premises, the owner was entitled to be restored to possession of the equipment, or, in the alternative, the owner and the bank each had chattel mortgages on the equipment which should be recognized. The owner and bank also sought a temporary restraining order and a preliminary injunction to prevent the sheriff from selling the equipment. The request for the temporary restraining order was denied, and a hearing was held on the merits of the intervention and the request for the preliminary injunction. The trial court dismissed the intervention. Upon agreement of the parties, the trial court ordered a separate appraisal and sale of the photographic equipment and directed the sheriff to hold the proceeds of the sale until a judgment on the merits of the intervention became definitive. The owner bought in the equipment at the sheriff's sale for $24,406. This devolutive appeal followed.

FACTS
On October 3, 1983, Roger H. Ogden and James Maurin-1981D, a Louisiana Partnership in Commendam (lessor) leased premises located in Baton Rouge, Louisiana, to Barby Joint Venture, d/b/a One Hour Moto-Photo, a Texas limited partnership (lessee), for the purpose of operating a photograph developing business. The primary term of the lease was July 1, 1984, through June 30, 1987. Brent N. Barby personally guaranteed performance of the lessee's obligations under the lease. The lessee subsequently sub-leased the premises to Kevin E. Taylor and Benjamin E. Parker (sub-lessees).
On July 19, 1984, 1.D. Walker, III, d/b/a Walker Investments (Walker) leased assorted photographic equipment to Krasco, Ltd. II (Krasco). Benjamin E. Parker was a partner in Krasco. This lease agreement provided that the photographic equipment would be located on the Baton Rouge leased premises. At the same time, Krasco executed a UCC-1 financing statement and a chattel mortgage in favor of Walker.
On August 17, 1984, Walker borrowed money from the Mercantile Bank of Fort Worth (Bank) to pay off the purchase price of the photographic equipment. At that same time, Walker executed a UCC-1 financing statement and a chattel mortgage on the equipment in favor of the Bank to secure this debt.
On August 24, 1984, the photographic equipment owned by Walker was delivered to the leased premises in Baton Rouge.
On August 27, 1984, both UCC-1 financing statements were recorded with the Secretary of State of Texas. On September 4, 1984, both chattel mortgages were recorded in the chattel mortgage records of East Baton Rouge Parish.
Lessee defaulted on the lease in early 1985. This suit was filed on August 2, 1985. On October 7, 1985, the lessor seized the photographic equipment (and other movables) on the leased premises pursuant to a writ of sequestration.

RANKING OF THE CHATTEL MORTGAGES

(Assignment of Error Number 1)
The Bank and Walker contend the trial court erred in holding that their foreign *3 security interests (the chattel mortgages and UCC-1 financing statements) did not prime the lessor's lien. Specifically, they contend that pursuant to La.R.S. 9:5354 they had sixty days from the dates of execution of those documents in Texas (July 19, 1984, and August 17, 1984) to perfect their security interests in Louisiana against third persons and that when they timely did so on September 4, 1984, these rights were retroactive to the dates of execution and primed the lessor's lien which was perfected on August 24, 1984.
It is not contested herein that the lessor's lien and privilege attached to the photographic equipment on August 24, 1984. La.C.C. art. 2705; Youree v. Limerick, 157 La. 39, 101 So. 864 (1924). The issue to be decided in this assignment of error is when did the Texas security interests become effective against third persons in Louisiana.
The parties hereto have not asserted that Texas law is applicable or attempted to show that Texas law is different from Louisiana law. Accordingly, we will apply Louisiana law to determine the legal relations between the parties. La.C.C.P. art. 1391; Vining v. Bardwell, 482 So.2d 685 (La. App. 1st Cir.1985), writ denied, 487 So.2d 439 (La.1986) and the cases cited therein.
Under Louisiana law, the privilege of the chattel mortgage is effective as to third persons from the date of its recordation. La.R.S. 9:5354; Acadiana Bank v. Foreman, 352 So.2d 674 (La.1977). The Walker-Krasco and Walker-Bank UCC-1 financing statements were recorded in Texas on August 27, 1984. The Walker-Krasco and Walker-Bank chattel mortgages were recorded in Louisiana on September 4, 1984. Both of these recordations antedated the attaching of the lessor's lien and privilege on August 24, 1984. However, the Bank and Walker argue that La.R.S. 9:5354 allows them to make their security rights effective as to third persons from the date of execution of the instruments which give the security interests.
La.R.S. 9:5353(B) provides, in pertinent part, as follows:
B. (1)(a) Except as provided in R.S. 9:5354, in order to affect third persons whenever personal property is transferred into this state by or at the direction of the owner thereof and such property is burdened with a security interest that was created when such owner was not domiciled in this state, any person holding a security interest on such property shall record a certified copy or multiple original of same in the office of the recorder of mortgages of the parish where the property is to be located and also in the office of the recorder of mortgages of the parish of the owner's domicile, if the owner is domiciled in the state.
(b) If the owner is not domiciled in the state, filing in the office of the recorder of mortgages of the parish where the property is to be located will be sufficient.
La.R.S. 9:5354, at all times pertinent hereto, provided, in part, as follows:
Whenever a person who is domiciled in another state enters into a contract with another regarding personal property and a security interest comparable to a chattel mortgage is created by such contract, the holder or owner of such foreign security interest may perfect his rights after the property has been transferred into the state of Louisiana as hereinafter provided.
If the holder or owner of the foreign security interest does not have notice that the property has been transferred, such security interest is effective against third persons for a period of sixty days from notice thereof.
If the holder or owner of the foreign security interest has notice that the property has been or will be transferred into this state, such security interest is effective against third persons for a period of sixty days from notice thereof.
The portions of La.R.S. 9:5353 and 5354 pertaining to foreign chattel mortgages were enacted by Acts 1978, No. 572. Prior to that time, the jurisprudence held that a foreign chattel mortgage which was recorded in the state where executed continued to convey constructive notice to third *4 persons when the mortgaged chattel was removed to Louisiana, even though the chattel mortgage was not recorded in Louisiana, provided the removal to this state was without the knowledge or consent of the mortgagee, and the mortgagee asserted his security rights within a reasonable time after he had knowledge of the removal. General Motors Acceptance Corporation v. Nuss, 195 La. 209, 196 So. 323 (1940); Glass v. McLendon, 66 So.2d 369 (La.App. 2nd Cir.1953). Act 572 of 1978 was obviously intended to change this jurisprudence by (1) providing for the perfection of the foreign chattel mortgage in Louisiana by recordation, (2) allowing the holder of a foreign chattel mortgage to perfect his security interest in Louisiana, even though he had prior notice that the chattel would be transferred to Louisiana, and (3) establishing a fixed sixty day period for perfecting the foreign chattel mortgage in Louisiana, which period commences with notice of the transfer of the chattel or notice of the intent to transfer the chattel.
We do not perceive this legislation as intending to give the holder of a foreign chattel mortgage greater rights in Louisiana than he had in the state of origin. If the chattel mortgage is not effective as to third persons in the state of origin until it is recorded there, then it should not be effective as to third persons in Louisiana until that same time. The statutes only provide for allowing the holder of a foreign chattel mortgage to perfect in Louisiana whatever rights he had in the state of origin. Since the Bank and Walker security interests were not effective as to third persons in Texas until August 27, 1984, they were not effective as to third persons in Louisiana until that same date, and the lessor's lien and privilege which predates them primes them.
This assignment of error is without merit.

RETROACTIVITY OF AMENDMENT TO LA.C.C. ART. 2707

(Assignment of Error Number 2)
The Bank and Walker contend the trial court erred in not applying La.C.C. art. 2707 as amended by Act 66 of 1984 to the facts of this case and refusing to allow Walker to regain possession of his property.
Former Article 2707 read as follows:
This right of pledge affects, not only the movables of the lessee and underlessee, but also those belonging to third persons, when their goods are contained in the house or store, by their own consent, express or implied.
In Alphonse Brenner Co. v. Frumer, 149 So. 238, 239 (La.App. 2nd Cir.1933), involving the seizure of a freezing unit and coil which were on the leased premises but owned by a third party, the Second Circuit stated as follows:
The freezing unit and coil is alleged to be the property of plaintiff, and was in the building under a contract of lease between the lessee, Campbell, and plaintiff. Plaintiff contends the property was only transiently in the building, and a determination of this contention will be decisive of the case.
Article 2707 of the Revised Civil Code provides that the right of pledge in favor of lessor affects, not only the movables of the lessee and underlessee, but also those belonging to third persons when their goods are contained in the house or store, by their own consent, express or implied; and article 2708, Revised Civil Code, provides that movables are not subject to this right when they are only transiently in the house, store, or shop, such as the baggage of a traveler in an inn, merchandise sent to a workman to be made up or repaired, and effects lodged in the store of an auctioneer to be sold. The property herein involved was in the store by the consent of plaintiff, who, by written act, leased it to be used in this very building. It cannot come under any of the exceptions provided in article 2708, unless it is held to be transiently in the store. It had been in this store for nearly two and one-half years.
See also Pelican State Bank v. Webb, 175 So. 855 (La.App. 2nd Cir.1937).
*5 Article 2707 was amended by Acts 1984, No. 66, § 1 to read as follows:
The lessor may lawfully seize movables belonging to a third person, when they are contained in the house or store by his own consent, express or implied. The owner is entitled to recover his property, but only by asserting his ownership prior to the judicial sale, in the manner provided by Article 1092 of the Code of Civil Procedure. If he fails to do so, the property may be sold as though it belonged to the lessee.
The effective date of this amendment was September 3, 1984, after the equipment was delivered to the leased premises, but before its seizure by lessor.
In Graham v. Sequoya Corporation, 478 So.2d 1223, 1225-1226 (La.1985), appears the following:
C.C.8 states the general rule that a law `can prescribe only for the future, it can have no retrospective operation ...' Additionally, R.S. 1:2 mandates that no statute is retroactive unless expressly stated. From these principles it has developed and is consistently stated that the rule of prospective application applies to laws that are substantive in nature, but laws that are procedural, remedial or curative may be accorded retroactive effect.... However, a law will not be applied retroactively if its language evidences a contrary intent or the retroactivity would operate to disturb vested rights....
A substantive law is one that creates an obligation, while a procedural, remedial or curative statute relates to the form of the proceeding or the operation of the laws.
As previously stated, the lessor's privilege attaches to chattels as soon as they are brought on the leased premises. Therefore, lessor's rights in the equipment as security for rental payments vested on August 24, 1984. Under former Article 2707, his rights primed those of the owner, since the equipment was not on the leased premises transiently. To apply amended Article 2707 retroactively would be to deprive the lessor of this vested security right. Therefore, we conclude that the effect of the amendment to Article 2707 is only prospective in application.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by the appellants.
AFFIRMED.
SHORTESS, J., concurs.

ON REHEARING
On original hearing, we framed the ranking problem herein as "when did the Texas security interests become effective against third persons in Louisiana." We concluded that La.R.S. 9:5354 did not give the holder of a foreign security interest greater rights in Louisiana than he had in the state of origin, the foreign security interests of the Bank and Walker were not effective in Texas and Louisiana until after the lessor's lien attached in Louisiana, and, therefore, the Louisiana lessor's lien primed the foreign security devices of the Bank and Walker.
The Bank and Walker applied for a rehearing asserting, in pertinent part, the following errors in our ruling:
1.
The Court's opinion disregarded the clear and unambiguous wording of La.R. S. 9:5354.
2.
The rationale of the Court's opinion with regard to the meaning of La.R.S. 9:5354 was incorrect in assuming that a literal application of 9:5354 would give a foreign chattel mortgage holder greater rights in Louisiana than in the state of origin.
3.
The provisions of La.R.S. 9:3301 et seq. plainly show that the security interest of Intervenors-Appellants did not need to be recorded prior to the attachment of plaintiff's lessor's privilege in order to prime the lessor's privilege.
In response, the lessor asserts that the collateral chattel mortgages are not foreign *6 security interests, but are Louisiana collateral chattel mortgages controlled by Louisiana law, and that the UCC-1 financing statements are foreign security interests, but are not effective in Louisiana because they were never recorded in Louisiana as required by La.R.S. 9:5353(B) and 5354. In the alternative, the lessor asserts that, even if the collateral chattel mortgages are foreign security interests, our original opinion correctly interprets La.R.S. 9:5354.
La.R.S. 9:5353(B) and 5354[1] are found in Part III (Chattel Mortgages) of Chapter 2 (Conventional Mortgages) of Code Title XXII (Of Mortgages) of Code Book III (Of The Different Modes Of Acquiring The Ownership Of Things) of Title 9 (Civil Code-Ancillaries) of the Louisiana Revised Statutes. Part III is comprised of La.R.S. 9:5351 through 5366, and nowhere therein is a "foreign security interest" defined. In oral argument on rehearing, Walker and the Bank contended that a Louisiana security interest was one executed in Louisiana and that all others were "foreign security interests." We need not precisely define a "foreign security interest" to determine the ranking of the collateral chattel mortgages herein. Parties to a contract may agree to have their contract controlled by the law of a state other than their own, provided the terms of the contract are not against the public policy of the state in which the contract is made and the state in which the contract is to be performed. United States Leasing Corporation v. Keiler, 290 So.2d 427 (La.App. 4th Cir.1974); Davis v. Humble Oil & Refining Company, 283 So.2d 783 (La.App. 1st Cir.1973); Palmer v. Chamberlin, 191 F.2d 532 (5th Cir.1951); Fine v. Property Damage Appraisers, Inc., 393 F.Supp. 1304 (E.D.La.1975).
The record indicates that Walker and the Bank are Texas domiciliaries and Kasco[2] is an Oklahoma domiciliary. The Kasco-Walker and Walker-Bank collateral chattel mortgages, copies of which are attached thereto as exhibits B and C respectively, show that they were executed before Texas notaries. Paragraph 12 of the Walker-Bank collateral chattel mortgage provides that "[t]his Collateral Chattel Mortgage shall be construed and enforced in accordance with the laws of the State of Louisiana." (Emphasis added.) Although the Kasco-Walker collateral chattel mortgage does not have a provision similar to Paragraph 12 of the Walker-Bank collateral chattel mortgage, a review of it shows it was intended to be a Louisiana security device and not a "foreign security interest." For example, it has State of Louisiana, Parish of East Baton Rouge in its heading, contains a pact de non alienando, provides the mortgaged chattels cannot be removed from the parish without written consent, provides for confession of judgment and sale by executory process, waives the requirements of numerous articles of the Louisiana Code of Civil Procedure, and refers to a clear mortgage certificate from the Clerk of Court of East Baton Rouge Parish. Accordingly, we conclude that these collateral chattel mortgages are not "foreign security interests" controlled by La.R.S. 9:5353(B) and 5354, but are Louisiana security devices controlled by Louisiana law. A Louisiana chattel mortgage is not effective against third persons until it is recorded. La.R.S. 9:5354.
The Walker-Bank and Kasco-Walker UCC-1 financing statements are "foreign security interests," but they are not effective in Louisiana against third persons (such as the lessor herein) because they were never recorded in Louisiana as provided for in La.R.S. 9:5353(B) and 5354.

DECREE
For the foregoing reasons, the original decree entered herein is correct and it is reinstated.
NOTES
[1] La.R.S. 9:5353 and 9:5354, as applicable to the facts of this case, have been amended by Acts 1984, No. 486, Acts 1986, Nos. 181 and 189 and Acts 1987, No. 701.
[2] Kasco was incorrectly spelled Krasco in the original opinion.