985 So.2d 281 (2008)
Alejandro Martinez ANAYA
v.
LEGG MASON WOOD WALKER, INC., Merrill Lynch, Pierce, Fenner & Smith, Hibernia National Bank and Manuel Lorenzo Martinez Hachity a/k/a Manuel Martinez.
No. 2007-CA-0654.
Court of Appeal of Louisiana, Fourth Circuit.
May 14, 2008.
*283 Harry Rosenberg, David L. Patron, Phelps Dunbar LLP, New Orleans, LA, for Plaintiff/Appellant.
Jack A. Ricci, Gary J. Giepert, Ricci & Giepert, New Orleans, LA, for Manuel Lorenzo Martinez Hachity a/k/a Manuel Martinez.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge, CHARLES R. JONES, and Judge Pro Tempore MOON LANDRIEU).
CHARLES R. JONES, Judge.
Alejandro Martinez Anaya appeals the judgment of the district court which denied his peremptory exceptions of res judicata and no cause of action; his declinatory exceptions of improper venue, lack of jurisdiction over the subject matter of the action and lack of personal jurisdiction; and his motion for summary judgment based on the doctrine of res judicata. We affirm.
Mr. Anaya is the nephew of the appellee, Mr. Manuel Martinez. At issue in this matter is a Mexican issued notarial act of irrevocable donation and power of attorney alleged to have been made by Mr. Martinez to the benefit Mr. Anaya.
Both Mr. Anaya and Mr. Martinez are domiciled in Mexico and the disputed donation and power of attorney were alleged to have been confected in Mexico before the appropriate governmental authority under Mexican law.
On December 12, 2002, Mr. Martinez and Mr. Anaya appeared before a notary public in Mexico. At that time, Mr. Martinez allegedly made an irrevocable donation inter vivos in favor of Mr. Anaya. The donation transferred cash and other assets located in various banks and brokerage institutions in the United States, including Louisiana.
At the same time that Mr. Martinez made the donation, he also appeared before the same notary public and issued a power of attorney granting Mr. Anaya all rights necessary to exercise possession over the assets and financial accounts listed in the notarial act of irrevocable donation. The notary and his assistant, who is a lawyer, both testified under oath that Mr. Martinez signed the donation and power of attorney in their presence.
In January 2003, Mr. Anaya contacted Hibernia Bank in New Orleans, Louisiana, and requested that the assets in Hibernia Bank that were listed in the notarial act of irrevocable donation be transferred to him pursuant to the act of donation and the power of attorney.
However, when Hibernia Bank would not transfer the assets, Mr. Anaya filed a petition for declaratory judgment on February 4, 2003, in the Civil District Court *284 for the Parish of Orleans, to secure the assets. The named defendants were Merrill Lynch, Legg Mason and Hibernia National Bank.
Because Mr. Martinez, the purported donor, was not made a defendant in Mr. Anaya's suit, Mr. Martinez intervened on February 6, 2003, and he also filed a reconventional demand against Mr. Anaya in which he challenged the validity of the act of donation in Louisiana. Mr. Martinez also sought damages for his expenses in having to contest the donation. Specifically, Mr. Martinez asserted that the act and power of attorney were forgeries and that they were obtained by fraud and should not be given any legal effect whatsoever.
Mr. Martinez also challenged the validity of his donation in Louisiana, arguing (1) the donation was confected before a notary by citizens who were and are domiciled in Mexico, and (2) the donation expressly stipulates that any dispute concerning the act of donation would be covered by Mexican law and must be heard in a Mexican court.
When Mr. Martinez sought to challenge the validity of the donation in Louisiana, Mr. Anaya voluntarily dismissed his petition for declaratory judgment in the Louisiana district court on March 18, 2003, so that Mr. Martinez's claims regarding the legal efficacy of the documents could be properly heard by a Mexican court. After the dismissal, the only claim remaining in the case was the issue of fraud raised in Mr. Martinez's petition of intervention and reconventional demand.
On February 19, 2003, Mr. Anaya filed a lawsuit against Mr. Martinez in the district court of Mexico seeking a judgment regarding (1) Mr. Martinez's allegations that the donation did not occur, and (2) the validity and enforceability of the act of donation and power of attorney. Mr. Anaya's suit also sought a declaration that the donation was authentic, valid, perfected, and binding for the parties. In addition, Mr. Anaya sought to have Mr. Martinez restrained from hindering or obstructing him from receiving all of the assets held in the United States, as referenced in the act of donation.
In response to Mr. Anaya's suit being filed in Mexico, Mr. Martinez also submitted to the jurisdiction of the Mexican court and filed an answer and counterclaim against Mr. Anaya. Mr. Martinez asserted the act of donation was forged and a fraud. He also asserted that because of the alleged fraud, that Mr. Anaya owed him damages.
The litigation continued for more than a year in the Mexican court. Mr. Martinez specifically retained attorneys and an expert, and he fully participated during the proceedings.
Three experts  including Mr. Martinez's own expert  concluded that Mr. Martinez's signatures on the documents were genuine. Mr. Anaya's claim was upheld by the Mexican district court as evidenced by a judgment on April 29, 2004. Specifically, the Mexican district court ruled that:
(1) the Court had jurisdiction to hear the dispute;
(2) that Mr. Anaya proved his claim and that Mr. Martinez failed to justify his exceptions and defenses, and that Mr. Martinez failed prove his counterclaim of fraud;
(3) the donation agreement contained in the notarial document numbered 31,536, dated December 12, 2002, as well as the notarial document numbered 31,539, dated December 12, 2002, which were sworn before Notary Public 85 of Huixquilucan, State of Mexico, were valid and perfected;

*285 (4) that Mr. Martinez must comply with the obligation to enter into the donation agreement;
(5) that Mr. Martinez "shall" deliver to Mr. Anaya, the assets, purpose of the donation, meaning all cash, investments, negotiable instruments and any other instrument that as of" December 12, 2002, "was deposited to the donor's name and today is claimed, in bank, brokerage or investment accounts in institutions in the United States of America and are connected with the Donation Agreement;" and
(6) Mr. Anaya "is absolved of all claims made in the counter-claim of Mr. Martinez."
A certified translated English version of the judgment appears in the record.
Mr. Martinez then appealed to the La Salas del Tribunal Superior, the Mexican appellate court, concerning the Mexican district court judgment. On August 5, 2004, the Mexican appellate court affirmed the April 29, 2004 judgment with respect to the court's findings.
On August 30, 2004, Mr. Martinez requested an "amparo"[1] with the Tribunal Colegiado, Mexico's highest appellate court. On November 30, 2004, the Tribunal Colegiado granted Mr. Martinez's amparo to review the appellate decision and suspended the underlying judgment against Mr. Martinez. Subsequently on December 6, 2004, the highest court in Mexico ordered that the judgment against Mr. Martinez be vacated and ordered the relitigation of the matter to be conducted sometime in the future.
However, upon obtaining a copy of the Mexican district court's judgment dated April 29, 2004, Mr. Anaya filed a motion for summary judgment in the Louisiana district court to dismiss Mr. Martinez's claims on the basis of res judicata.
Mr. Martinez subsequently amended his petition regarding his earlier action for declaratory judgment in which he sought to have the Louisiana court declare that the donation was a forgery and/or legally invalid under Louisiana law, since the donation was not in authentic form and had no legal effect in Louisiana.
Mr. Anaya then filed peremptory exceptions of res judicata and no cause of action, and declinatory exceptions of improper venue, lack of jurisdiction over the subject matter, and lack of personal jurisdiction. His exceptions were set for hearing on December 3, 2004.
Although the district court subsequently granted Mr. Anaya's peremptory exception of res judicata via a judgment issued on December 9, 2004, on June 9, 2005, the district court granted Mr. Martinez a new trial and reversed its earlier judgment finding that the Mexican donation was invalid for failing to comply with Louisiana law. It is from this judgment that Mr. Anaya now appeals.
Mr. Anaya raises the following nine (9) assignments of error:
(1) the district court erred in failing to grant his exception of res judicata and motion for summary judgment on res judicata grounds;
(2) the district court erred in failing to grant Mr. Anaya's peremptory exception of no cause of action;
(3) the district court erred in failing to grant Mr. Anaya's exception of improper venue;
(4) the district court erred in failing to grant Mr. Anaya's exception of a lack of jurisdiction with the subject matter;

*286 (5) the district court erred in failing to grant Mr. Anaya's exception of lack of personal jurisdiction;
(6) the district court erred in finding that there was no final and definitive judgment from the Mexican court as to the validity of the donation;
(7) the district court erred in failing to find that Mexican law does not govern the validity of the act of donation;
(8) the district court erred in failing to find that Mexican courts have exclusive jurisdiction over, and are the exclusive venue for, the validity of the act of donation; and
(9) the district court erred in finding that it had personal jurisdiction over Mr. Anaya for adjudicating the validity of the act of donation.

DISCUSSION

Summary Judgment on Res Judicata Grounds
In his first assignment of error, Mr. Anaya asserts that the district court erred in failing to grant his exception of res judicata and motion for summary judgment on res judicata grounds.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Champagne v. Ward, 03-3211, p. 4 (La.1/19/05), 893 So.2d 773, 776. In discussing the standard of review of a motion for summary judgment on appeal, this Court stated that "[i]n determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence." Coto v. J. Ray McDermott, S.A., 99-1866, p. 4 (La.App. 4 Cir. 10/25/00), 772 So.2d 828, 830.
Res Judicata:
Incorporated into Mr. Anaya's first assignment of error is the allegation that the district court erred with respect to denying his motion for summary judgment, in which he alleged that the motion for summary judgment was warranted based on res judicata grounds.
Appellate courts review a dismissal as to res judicata under the de novo standard because the exception raises a question of law. Dowl v. Redi Care Home Health, XXXX-XXXX, p. 4 (La.App. 4 Cir. 12/22/04), 917 So.2d 434, 438.
Under La. R.S. 13:4231, the res judicata statute, there are three exceptions to a finding of res judicata. The statute provides as follows:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment;
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of the final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action;
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
In the instant matter, Mr. Anaya argues that the Mexican district court's judgment, *287 dated April 29, 2004, has res judicata effect because the district court determined that the act of donation and power of attorney were valid. He asserts that Mr. Martinez's action in the Louisiana court attempted to relitigate the matters disposed of by the April 29, 2004, Mexican judgment.
Mr. Anaya also asserts that since Mr. Martinez's claims regarding the validity of the donation have been adjudicated by the Mexican district court, that the Louisiana district court was required to dismiss Mr. Martinez's amended and supplemental petition under the doctrine of res judicata.
In support of this contention Mr. Anaya cites, Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 95-0654 (La.1/16/96), 666 So.2d 624, in which the Supreme Court stated:
It is implicit in the concept of a judicial system that controversies be finally resolved so that parties may enjoy their rights and so that conflicting legal obligations may not be imposed on an individual; litigation must end at some point. Precluding relitigation prevents inefficient use of the courts' resources, reduces the possibility of harassment through vexatious suits, and helps maintain respect for the judicial proceeds by guarding against inconsistent decisions. Id., 95-0654, p. 11, 666 So.2d at 631 (quoting, Dixon, Booksh, Zimmering, Res Judicata in Louisiana Since Hope v. Madison, 51 Tul.L.Rev. 611 (1977), footnotes in quotation omitted).
In addition, Mr. Anaya maintains that res judicata is not discretionary and mandates the effect should be given to all final judgments. He asserts that pursuant to La. R.S. 13:4231, all causes of action arising out of the same transaction or occurrence are merged into the judgment and are barred by subsequent litigation on those causes of action and "`once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties,'" Segal v. Smith, Jones & Fawer, L.L.P., 02-1448, p. 5 (La.App. 4. Cir 1/29/03), 838 So.2d 62, 65, citing Hudson v. City of Bossier, 33,620 (La.App. 2 Cir. 8/25/00), 766 So.2d 738, 743.
Essentially, Mr. Anaya asserts that the Louisiana district court was wrong both factually and legally. From a factual standpoint, he asserts that the Mexican judgment is not under appeal. He notes that the Mexican appellate court (Las Salas del Tribunal Superior) rejected Mr. Martinez's appeal on August 5, 2004, and fully affirmed the district court's judgment. He also notes that Mr. Martinez exhausted his appeals of the Mexican judgment and he asserts that there is currently no suspension of the Mexican appellate court's judgment which found that the act of donation, at issue in the instant matter, is valid, binding, and fully enforceable.
From a legal standpoint, Mr. Anaya argues that the Mexican judgment became final for res judicata purposes when it was rendered by the Mexican district court, and not the appellate court. He points out that the res judicata statute provides that "a valid and final judgment is conclusive between the same parties," and that under Louisiana Code of Civil Procedure art. 1841,[2] a final judgment pertains to the judgment of a district court.
*288 We note however, that Mr. Anaya's procedural recitation of the history of the Mexican case is misleading especially considering that a party may fully exhaust his remedies with respect to appealing a final judgment of a district court, which means that the non-prevailing party may chose to seek supervisory writs with a court of higher jurisdiction than the appellate court. Mr. Anaya neglects to mention the very specific fact that Mr. Martinez exercised his right to appeal the August 5, 2004 decision of the Las Salas del Tribunal Superior by applying for and being granted an amparo by the Mexican Tribunal Colegiado, Mexico's highest appellate court with superior jurisdiction to that of the Las Salas del Tribunal Superior.
Contrary to Mr. Anaya's position, Mr. Martinez asserts that because he sought supervisory writs with the Mexican superior appellate court (Las Salas del Tribunal Superior) concerning the original April 29, 2004 Mexican judgment, which concluded that the donation was valid, the same Mexican judgment was appealed to the Mexican Superior Court for review and subsequently to the Tribunal Colegiado.
On August 30, 2004, Mr. Martinez then requested an "amparo" with the Tribunal Colegiado. On November 30, 2004, the Tribunal Colegiado granted Mr. Martinez's amparo to review the appellate decision and suspended the underlying judgment against Mr. Martinez. Subsequently, on December 6, 2004, the highest court in Mexico ordered that the judgment against Mr. Martinez be vacated and ordered the relitigation of the matter to be conducted sometime in the future.
Mr. Martinez asserts this very point in challenging Mr. Anaya's argument that the judgment of the Mexican district court was final. Mr. Martinez argues that the Tribunal Colegiado "contemporaneously suspended" the underlying suit against Mr. Martinez on December 6, 2004. The Tribunal Colegiado also ordered that the judgment against Mr. Martinez be vacated and ordered the relitigation of the matter to be conducted sometime in the future. Hence, Mr. Martinez asserts that the instant exception for res judicata sought by Mr. Anaya in the Louisiana suit was properly denied because there was no final judgment to review, as the original judgment was vacated.
Mr. Martinez avers that under La.Code Civil Pro. art. 2166(E),[3] a judgment does not become final until a writ of certiorari is denied by the Supreme Court. To support this position, Mr. Martinez cites, Avenue Plaza, L.L.C., v. Falgoust, 96-0173 (La.7/2/96), 676 So.2d 1077, 1079, in which the Supreme Court stated:
Res judicata bars relitigation of a subject matter arising from the same transaction or occurrence of a previous suit. LSA-R.S. 13:4231. It promotes judicial efficiency and final resolution of disputes. Terrebonne Fuel & Lube v. Placid Refining, 95-0654, 95-0671, pp. 11-12 (La.1/16/96); 666 So.2d 624, 631. A judgment determining the merits of a case is a final judgment. La.C.C.P. art. 1841. See also, Tolis v. Board of Sup'rs of Louisiana State University, 95-1529 *289 (La.10/16/95); 660 So.2d 1206. A valid and final judgment is conclusive between the same parties, except on appeal or other direct review. LSA-R.S. 13:4231. If a certiorari application is filed, the court of appeal judgment becomes final and definitive when the supreme court denies the application for certiorari. La.C.C.P. art. 2166 D.
A final judgment from which there can be no appeal acquires the authority of the thing adjudged. La.C.C. art. 3506(31). Once a final judgment acquires the authority of the thing adjudged, no court has jurisdiction to change the judgment, regardless of the magnitude of the final judgment's error. Tolis at p. 3; 660 So.2d at 1206-1207.
The Mexican Superior Court's decision to vacate the original judgment had the effect of vacating the Mexican original judgment, with the date of December 3, 2004, and Mr. Anaya's reliance upon the original judgment to argue res judicata is unfounded on the basis that there was no final judgment since it was vacated by the Tribunal Colegiado.
Mr. Martinez asserts that Mr. Anaya had no basis to assert res judicata in the district court proceedings in Louisiana and the district court's denial of Mr. Anaya's exception of res judicata was proper. We agree.
The record before us establishes that the Mexican appellate decision on which Mr. Anaya relies to assert his exception of res judicata was subsequently accepted for review, and was subsequently vacated by the Tribunal Colegiado. The record also reflects that the Tribunal Colegiado dismissed all of the claims relating to the judgment it vacated in the original suit because of new evidence, and it ordered that all of the matters be relitigated "at a later date."
Considering the above discussion, we agree with Mr. Martinez and conclude that the April 29, 2004 judgment of the Mexican court, which was later vacated by the Tribunal Colegiado, for all practical purposes, is without effect. Hence, there is no final judgment in the Mexican proceedings and an exception of res judicata cannot be maintained in the instant matter because no final judgment exists with respect to the validity of the donation in the Mexican proceedings. Therefore, we find that Mr. Anaya's first assignment of error does not have merit.

Exception of No Cause of Action
In his second assignment of error, Mr. Anaya argues that the district court erred in failing to grant his peremptory exception of no cause of action.
In Fagot v. Parsons, XXXX-XXXX (La.App. 4 Cir. 5/9/07), 958 So.2d 750, this Court stated:
Whether a plaintiff has a cause of action is a question of law. Therefore, this Court is required to conduct a de novo review in determining whether the trial court was legally correct in granting the exception of no cause of action. See, e.g., Badeaux v. Southwest Computer Bureau, Inc., 05-0612, 05-719, p. 7 (La.3/17/06), 929 So.2d 1211, 1217.
* * *
The exception of no cause of action is a peremptory exception, the function of which is "to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923. In the Badeaux case, the Louisiana Supreme Court discussed the exception of no cause of action. The Supreme Court stated that "the focus in an exception of no cause of action is on whether the law provides a remedy against the particular *290 defendant." 929 So.2d at 1216-17. The Supreme Court discussed the function of an exception of no cause of action and stated that an exception of no cause of action "questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition." Id. at 1217.
* * *
In considering the merits of an exception of no cause of action, the trial court is required to decide whether to grant or deny the exception on the basis of the face of the petition. Id. To resolve the issues raised by an exception of no cause of action, "each well-pleaded fact in the petition must be accepted as true." Id.

Id., XXXX-XXXX, pp. 2-3, 958 So.2d at 751-752. (footnote omitted)
Mr. Anaya asserts that Mr. Martinez alleged in his amended and supplemental petition that Louisiana law should apply to the validity of the donation. He notes that while the district court originally found that Mr. Martinez's claims were barred by res judicata, that the district court subsequently reversed itself and found[4] that the validity of the donation was governed by Louisiana law instead of Mexican law and that the donation was invalid for lack of proper form.
In the instant matter, Mr. Anaya offers an exhaustive, twelve-page argument alleging that Mexican law should apply to the instant action. Therein, he asserts that Mexican law would be impaired, and he discusses the fact that the act and donation and power of attorney of the Mexican (foreign) jurisdiction in the instant action, have not been afforded the same full faith and credit they deserve.
Mr. Martinez does not specifically address the allegations made by Mr. Anaya with respect to this assignment of error regarding Mr. Anaya's exception of no cause of action; however, Mr. Martinez does reiterate his position that the donation is invalid under Louisiana law for lack of proper form.
However, as we discussed above, this Court need only consider the allegations contained in Mr. Martinez's petition of intervention and reconventional demand to determine if the district court erred in denying Mr. Anaya's exception of no cause of action. In addition, to resolve the issues raised by an exception of no cause of action, "each well-pleaded fact in the petition must be accepted as true."
Mr. Martinez's petition sets forth that:
3.
On January 21, 2003, Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") contacted Mr. Martinez in Mexico, saying that it was being presented with certain documents in which all the monies in Mr. Martinez's account with Merrill Lynch were to be wired into a Swiss bank account. The Merrill Lynch representative told Mr. Martinez that the person who had made the request on the telephone was a person who represented himself as Mr. Martinez himself.
4.
Of course, Mr. Martinez denied this to the Merrill Lynch representative, and immediately called undersigned [his counsel] to investigate the matter.
5.
In the course of the investigation, shortly after January 17, 2003, it was learned that a similar request was made to Hibernia National Bank, another institution *291 in which Mr. Martinez held an account.
6.
Merrill Lynch took no action on these alleged documents submitted by the individual claiming to be Manuel Martinez Hachity. Hibernia National Bank instead, froze Mr. Martinez's accounts. . . .
7.
On January 30, 2003, plaintiff-in-reconvention [Mr. Anaya] filed a Verified Application for Injunction, temporary restraining Order and Rule for Preliminary Injunction. In the said suit, Mr. Anaya cited only as defendants, Merrill Lynch, Legg Mason, and Hibernia National Bank. He did not join Mr. Martinez.
11.
At all times material hereto, defendant, Manuel Martinez, did not execute any Donation to the plaintiff. Alternatively, if his signature does appear on any such document, it was procured in error, as defendant had absolutely no intention to give his nephew any of his funds.
12.
As a result, defendant in reconvention, Manuel Martinez, seeks a Declaratory Judgment of this Court decreeing any such donation to be null and void and without legal effect.
13.
In addition, the plaintiff in reconvention, Manuel Martinez, alleges that the law of Louisiana should apply as to the validity of such donation, and as a result, the purported Donation should be nullified to the extent it ever validly existed.
In its reasons for judgment, the district court concluded that as to Mr. Anaya's arguments relating to his peremptory exception of no cause of action and declinatory exceptions of improper venue, lack of jurisdiction over the subject matter of the action, and lack of personal jurisdiction, wherein he argued that (1) Mexican law governs and (2) the parties expressly waived any jurisdiction other than Mexico:
This Court is not inclined to make a finding that Mexican law governs and that Mexico is the proper jurisdiction based solely upon the terms of an act of donation that has yet to adjudged as authentic, valid and binding.
Clearly, the record before this Court illustrates that the controversy brought in the Louisiana court concerned Mr. Anaya's claim to property belonging to Mr. Martinez. Mr. Anaya's assertion that Mr. Martinez does not have a cause of action in this matter is non-persuasive because in his capacity as the purported donor of the property, he is the only person who would have the right to challenge the donation in order to assert his right of ownership. Therefore, we conclude that this assignment of error does not have merit.

Venue
In his third assignment of error, Mr. Anaya asserts that the district court erred in failing to grant his exception of improper venue.
"`Venue is a question of law and where a legal error interdicts the fact finding process and the record is otherwise complete, an appellate court should then conduct a de novo review of the record.'" Crawford v. Blue Cross and Blue Shield of Louisiana, 2000-2026, p. 3 (La.App. 4 Cir. 12/5/01), 814 So.2d 574, 577, citing Bloomer v. Louisiana Workers' Compensation Corp., 99-0707, p. 3 (La.App. 1 Cir. 5/12/00), 767 So.2d 712, 714.
*292 In the instant matter, Mr. Anaya argues that the district court lacked proper venue. In support of his argument, he restates that the sixth clause of the donation inter vivos provides:
For all controversies arising with regard to the donation the parties thereto submit to the Law and Courts of the Federal District [of Mexico], and expressly waive any other jurisdiction. . . .
Regarding the exceptions of improper venue, Mr. Anaya avers that the Mexican court ruled that the donation was authentic, valid, binding, and fully enforceable. Essentially, he states that because of the choice of forum provision contained in the donation, Mr. Martinez "expressly waived" all other jurisdictions, including Louisiana.
Mr. Anaya avers that the Mexican donation was prepared with the purpose of complying with Mexican law and that:
The donation is written in Spanish and was notarized by a Mexican notary, who is a public official under Mexican law. The notarized act of donation is a Mexican public document under both Mexican codal law and under the Hague Convention Treaty, to which the United States is a signatory. The donation was confected pursuant to Mexican law and was prepared with the purpose of complying with Mexican law.
Mr. Anaya also asserts that Louisiana's relationship to the instant litigation is limited. He notes that the donation inter vivos was not drafted or signed in Louisiana and that the donation is not expressly governed by the laws or courts of Louisiana. He contends that no residents or citizens of Louisiana are parties to the donation inter vivos, and he also notes that the donation is not written in English and the parties to the donation do not speak English. He also maintains that on its face, the donation does not necessarily concern property in Louisiana, noting specifically that by the terms of the donation, it concerns "all of the cash, investment, credit and investment accounts or contracts and institutions of the United States of America," specifically noting that "Louisiana," and "New Orleans do not appear in the donation inter vivos.
However, Mr. Anaya points out that while the donation does list the accounts for specific banks, only a small percentage of those accounts are for banks with offices in Louisiana. He avers that the vast majority of the banks are located elsewhere.[5] Mr. Anaya also asserts that the expectations of the parties dictate that Mexican law, and not Louisiana law, govern the donation.
Mr. Anaya also asserts that "the needs of international systems require the application of Mexican law." He maintains that because the donation was confected in Mexico, the donation is a public document, pursuant to the Hague Convention, and bears the title "Apostille."[6] He asserts that since the United States and Mexico are signatories to the Hague Convention, there is no requirement for legalization of public documents. He notes that the Hague Convention provides that the Apostille only need be affixed to the notarial document to prove legal efficacy. He asserts that in the instant matter, he provided the district court with Apostille copies of the act of donation and the power of attorney; therefore, he asserts that he is *293 in compliance with satisfying the requirements of international law because the documents are self-authenticating and are entitled to recognition by the Louisiana district court.
Mr. Anaya also alleges that Mr. Martinez is engaged in forum shopping in an effort to obtain different legal results in Louisiana. Mr. Anaya alleges that Mr. Martinez seeks to have the Louisiana courts invalidate a donation that is not only a Mexican public document, but that Mr. Martinez also seeks to have the "multiple judgments of the trial and appellate courts of Mexico that have held that the donation is valid, perfected, and binding, and fully enforceable," declared invalid.
He notes that the adverse effect of subjecting a party to the law of more than one state would require the parties to the donation to ensure that the donation, which in this case concerns investments in the United States, complies with the substantive and procedural laws of each and every state and country. Nevertheless, he argues that Mexican policies would be most adversely affected if its laws are not applied to the instant matter, while Louisiana's policies would not be substantially impaired.
Mr. Martinez argues, on the contrary, that Mr. Anaya himself instituted the present action. Specifically, he points out that paragraph 2 of Mr. Anaya's petition sets forth the following:
Jurisdiction and venue are proper in Orleans Parish because (1) bank account and brokerage accounts which are the subject of this action are located in New Orleans, Louisiana, (2) on information and belief, Mr. Martinez established these accounts in New Orleans, (3) Mr. Martinez has submitted to the jurisdiction and venue of this Court in related litigation . . . and (4) on information and belief, Mr. Martinez either directly or indirectly owns property in New Orleans, has on-going business dealings in New Orleans, and has such contacts with Louisiana that would subject Mr. Martinez to the general jurisdiction of Louisiana courts.
Mr. Martinez argues that by making the above assertion in his petition, Mr. Anaya has judicially confessed that Mr. Martinez had the requisite contacts in Louisiana sufficient to allow for its laws to be applied, hence, venue and jurisdiction are proper.
Also, generally speaking, proper venue is determined by the parish in which parties reside, events occur or things are located. See La.Code Civil Pro. art. 42, 71-85.
The record establishes that some of the items belonging to Mr. Martinez that are subject to the donation inter vivos, and that are sought to be obtained by Mr. Anaya, are located in banks located in New Orleans. Black's Law Dictionary, 6th Ed., defines situs as: "[s]ituation; Location; e.g. location or place of crime or business. Site; position; the place where a thing is considered, for example, with reference to jurisdiction over it, or the right or power to tax it. It imports fixedness of location. . . ." Hence, since the situs of the items sought to be claimed is clearly in New Orleans, as it relates to the items held by New Orleans defendants Hibernia Bank, Legg Mason, and Merrill Lynch, the parish of venue is clearly in Orleans Parish. Hence, we find that this assignment of error is without merit.

Lack of Subject Matter Jurisdiction
In his fourth assignment of error, Mr. Anaya asserts that the district court erred in failing to grant his declinatory exception of lack of jurisdiction over the subject matter.
*294 Regarding the review the exception of lack of subject matter jurisdiction, La. Code Civ. Proc. Art. 2, defines subject matter jurisdiction as "the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted."
As a general rule, as we discussed in Winston v. Millaud, XXXX-XXXX (La.App. 4 Cir. 4/12/06), 930 So.2d 144,
Louisiana is required to give full faith and credit to judgments of courts in sister states unless the foreign forum lacked jurisdiction over the litigants or over the subject matter involved in the controversy. U.S.C.A. Const. Art. 4, § 1; LSA-C.C.P. Art. 1; Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943); E & L Lumber Co. v. Ashy Enters., Inc., 594 So.2d 948, 949 (La.App. 3 Cir.1992). This rule is so well established that in a suit for the recognition of a foreign judgment, the only issue of the foreign proceeding with which a Louisiana court may concern itself is the question of the foreign court's jurisdiction over the parties or the subject matter involved within that action. Holden v. Holden, 374 So.2d 749 (La.App. 3 Cir. 8/23/79); Rice v. Kliebert, 330 So.2d 374 (La.App. 4 Cir.1976); See also, Abernathy v. Chambers, 482 S.W.2d 129, 132 [Tenn.1972); Harris v. Poole, 688 S.W.2d 78, 81 (Tenn.Ct.App.1984). Although the jurisdiction of a court rendering a judgment is open to judicial inquiry when enforcement of that judgment is sought within this State, there is a general presumption that the decree is valid and the burden of undermining such a judgment rests heavily upon the assailant. Id. at 751; Navarrette v. Laughlin, 209 La. 417, 24 So.2d 672 (1946). The burden to establish that the court of the rendering state was without jurisdiction can only be discharged by clear and positive proof. Holden v. Holden, 374 So.2d 749 (La.App. 3 Cir. 8/23/79), citing Turpin v. Turpin, 175 So.2d 357 (La.App. 2 Cir. 1965).
Id., XXXX-XXXX, pp. 8-9 (La.App. 4 Cir. 4/12/06), 930 So.2d at 151.
In the instant matter, Mr. Anaya does not address this assignment of error with respect to the validity of the form of the donation inter vivos. Rather, he asserts that Mexican law should govern the donation, and not Louisiana conflict of law statutes. He avers that the Mexican court ruled that the donation was authentic, valid, binding, and fully enforceable. Essentially, he states that because of the choice of forum provision contained in the donation, Mr. Martinez "expressly waived" all other jurisdictions, including Louisiana.
Mr. Anaya also argues that since the Mexican district court found that the donation was authentic, valid, and binding, he asserts that the choice of law provision contained in the donation should be adhered to. The referenced provisions provide "that for any controversy arising with regards to this donation, the parties thereto submit to the laws and courts of the federal district of Mexico."
Mr. Anaya also alleges that both he, as the donee, and that Mr. Martinez, as the donor, in the instant matter, expressly agreed to the choice of law provision specified in the act of donation. However, at the same time, he also argues that "even if the parties to the Act of Donation had not expressly agreed that Mexican law would apply  which they did  this Court would still be required to apply Mexican law pursuant to Article 3515 of Louisiana's Civil Code." La. Civil Code art. 3515 titled, Determination of the applicable law; general and residual rule, reads:
*295 Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
However, with respect to recognition of foreign judgments from foreign countries, La.Code Civil Pro. art. 2541, titled, Execution of foreign judgments sets forth:
A. A party seeking recognition or execution by a Louisiana court of a judgment or decree of a court of the United States or a territory thereof, or of any other state, or of any foreign country may either seek enforcement pursuant to R.S. 13:4241,[7] et seq., or bring an ordinary proceeding against the judgment debtor in the proper Louisiana court, to have the judgment or decree recognized and made the judgment of the Louisiana court.
B. In the latter case, a duly authenticated copy of the judgment or decree must be annexed to the petition.
[Emphasis added]. Mr. Anaya also adds that Louisiana courts "have repeatedly and consistently held that parties to an agreement may agree to the law that will govern the agreement . . ." and "have even consistently held parties may have their agreements controlled by the law of a state other than their own." To support this contention, Mr. Anaya cites a number of cases, including a First Circuit case that cites a Fourth Circuit case, Ogden v. Barby Joint Venture, 525 So.2d 1 (La.App. 1 Cir.1987), on rehearing, citing United States Leasing Corporation v. Keiler, 290 So.2d 427 (La.App. 4 Cir.1974).
In Ogden, a lessor brought action against a lessee and sublessees, seeking money damages and recognition of the lessor's lien on photographic equipment seized on leased premises via a writ of sequestration. The Lessor, lessee, and sublessees entered into a consent judgment. However, the owner of photographic equipment and foreign bank intervened. The district court dismissed the intervention and a devolutive appeal was taken. The Court of Appeal held, inter alia, that: (1) lessor's lien primed chattel mortgages in favor of owner and foreign bank, and (2) amendment concerning rights of third-party owners and lessors to property on leased premises could not be retroactively applied to deprive lessor of vested security right in seized photographic equipment. On rehearing, the Court of Appeal specified:
Parties to a contract may agree to have their contract controlled by the law of a state other than their own, provided the terms of the contract are not against the public policy of the state in which the contract is made and the state in which the contract is to be performed. United States Leasing Corporation v. Keiler, 290 So.2d 427 (La.App. 4th Cir. *296 1974); Davis v. Humble Oil & Refining Company, 283 So.2d 783 (La.App. 1st Cir.1973); Palmer v. Chamberlin, 191 F.2d 532 (5th Cir.1951); Fine v. Property Damage Appraisers, Inc., 393 F.Supp. 1304 (E.D.La.1975)."
Id., 525 So.2d at 6.
We note that Mr. Anaya was first to avail himself of the Louisiana court by filing his petition for declaratory relief after Hibernia refused to honor his request to turn over certain items in its possession, that were contained in the contested donation inter vivos. Thus, Mr. Anaya's attempts, to claim the property by presenting the purported donation and power of attorney directly to Hibernia Bank were not successful, as Hibernia Bank had reason to question the authenticity of the documents presented to it. Therefore, Mr. Anaya had no choice other than to file a petition for a declaratory judgment to obtain a legal determination of the purported donation's authenticity.
We note that with respect to La.Code Civil Pro. art. 2541, the execution of a foreign judgment depends upon the finality of the judgment sought to be enforced. In the instant matter, there was no final judgment to be enforced. Mr. Anaya availed himself of a Louisiana court in an effort to compel Hibernia Bank to transfer money and other items of value to him. However, the matter was contested by both the bank and Mr. Martinez via the filing of an answer and reconventional demand. Hence, there arose a controversy, which compelled the alleged donee and donor to litigate the matter in Mexico prior to any proceedings moving forward in the Louisiana court case. To date, these matters have not been relitigated, as ordered by the Tribunal Colegiado.
The record in this matter establishes, and it is undisputed by the parties, that the donation inter vivos was not passed before a notary and two witnesses as required under Louisiana law. On December 12, 2002, Mr. Martinez and Mr. Anaya both appeared before a notary public in Mexico. At that time, Mr. Martinez purportedly made an irrevocable donation inter vivos in favor of Mr. Anaya. This same donation inter vivos ostensibly transferred cash and other assets located in banks and brokerage institutions in the United States, including Louisiana, to Mr. Anaya.
At the same time that Mr. Martinez allegedly made the donation inter vivos, he also is alleged to have issued a power of attorney before a notary and granted Mr. Anaya all rights necessary to exercise power over the assets and financial accounts listed in the notarial act of irrevocable donation. The notary and his assistant, who is a lawyer, both testified under oath that Mr. Martinez signed the donation and power of attorney in their presence. However, a notary and his assistant, and the nature of the objects of the donation inter vivos do not satisfy the requirements under La. Civil Code art. 1536, which requires the aforementioned notary, the parties to the donation, and two additional independent witnesses.
In its reasons for judgment, the district court even noted:
Mr. Anaya has not disputed the fact that the act of donation was not passed before two witnesses. Thus, this Court is of the opinion that the act of donation was not executed in accordance with Louisiana law. As such, the Court must grant Mr. Martinez's motion for summary judgment.
Hence, after our de novo review, we find that this assignment of error does not have merit, as the Louisiana court does have jurisdiction over the subject matter in the instant case.

*297 Lack of Personal Jurisdiction:

Louisiana Code of Civil Procedure article 6, defines personal jurisdiction as "the legal power and authority of a court to render a personal judgment against a party to an action or proceeding." Pursuant to that article, the exercise of personal jurisdiction in this case requires service of process on the defendant, and "the submission of the party to the jurisdiction of the court by commencing an action or by the waiver of objection to jurisdiction by failure to timely file the declinatory exception." La. C.C.P. art. 6(A)(3). In addition, pursuant to La. C.C.P. art. 6, "a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and with the Constitution of the United States." La. C.C.P. art. 6(B).
As this Court noted in Walker v. Super 8 Motels, 2004-2206 (La.App. 4 Cir. 12/7/05), 921 So.2d 983:
Appellate courts when reviewing a trial court's legal ruling on a declinatory exception of lack of personal jurisdiction apply a de novo standard. See Dahmes v. Champagne Elevators, Inc., XXXX-XXXX (La.App. 4 Cir. 3/3/04), 869 So.2d 904, writ denied, XXXX-XXXX (La.6/4/04), 876 So.2d 93; Anderson v. Interamerican Mfg., Inc., 96-1639, p. 3 (La.App. 4 Cir. 4/9/97), 693 So.2d 210, 212. The Louisiana long-arm statute provides the circumstances under which a Louisiana court may exercise personal jurisdiction over a nonresident defendant; it provides in pertinent part:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the of the following activities performed by the nonresident:
(1) Transacting any business in this state . . .
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and the Constitution of the United States.
La.Rev.Stat. 13:3201.
In 1987, the Louisiana Legislature added R.S. 13:3201(B), making the limits of the Louisiana long-arm statute co-extensive with the limits of constitutional due process. Superior Supply Co. v. Associated Pipe and Supply Co., 515 So.2d 790 (La.1987). The sole inquiry into jurisdiction over a nonresident is thus a one-step analysis of the constitutional due process requirements. Id.

* * *
The first part of the test requires the plaintiff to prove the defendant's minimum contacts with the forum. Thus, even when, as here, the defendant is the party challenging jurisdiction, the initial burden of proof is on the plaintiff. To meet that burden, the plaintiff must establish that the defendant purposefully availed itself of the privilege of conducting activities within the forum state and thus invoked the benefits and protections of its laws. A & L Energy, XXXX-XXXX at p. 5, 791 So.2d at 1271 (citing United States Supreme Court cases). The defendant's purposeful availment must be such that "the defendant should reasonably anticipate being haled into court' in the forum state." Id.
"Once the plaintiff meets his burden of proving minimum contacts, the burden shifts to the defendants to prove the assertion of jurisdiction would be so unreasonable *298 in light of `traditional notions of fair play and substantial justice' to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum." A & L Energy, XXXX-XXXX at p. 11, 791 So.2d at 1274. The second part of the test thus imposes on the defendant the burden of establishing the unfairness of the assertion of jurisdiction.
Id., 2004-2206, pp. 4-6, 921 So.2d at 986-987.
Mr. Anaya asserts that the Louisiana court lacked personal jurisdiction over him, as a non-resident, unless he had sufficient "minimum contacts" with the forum state, as outlined in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). International Shoe provides "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" Id., 326 U.S. at 316, 66 S.Ct. 154, citing, Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 132 A.L.R. 1357 (1940). See Holmes, J., in McDonald v. Mabee, L.R.A.1917F, 458, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608 (1917). Compare Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316, 319, 63 S.Ct. 602, 604, 606, 87 L.Ed. 777, 145 A.L.R. 1113 (1943). See Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932); Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927); Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158, 88 A.L.R. 170 (1933)."
Mr. Anaya asserts that his status as a Mexican citizen, and the fact that he has no business or property in Louisiana, support his argument that Louisiana lacks personal jurisdiction over him and that its lacks jurisdiction over the subject matter, since the litigation concerns the validity of a donation that was perfected in Mexico. Because of the alleged lack of jurisdiction in Louisiana, he asserts that he has no expectation of being hailed into a Louisiana Court to litigate the validity of the donation. Thus, he asserts that the district court committed reversible error in asserting its jurisdiction.
On the contrary, Mr. Martinez points out that Mr Anaya himself specifically argued, in his memorandum in support for his motion for summary judgment, that the objects subject to the donation are located in New Orleans. In addition, Mr. Martinez once again directs this Court's attention to paragraph 2 of Mr. Anaya's petition, discussed infra in assignment of error No. 2, which sets forth that jurisdiction and venue are proper in Louisiana.
Mr. Martinez notes that Mr. Anaya's explanation as to Mr. Martinez's relative connection to New Orleans, and the subsequent filing of the petition to claim or exercise possession over items located in Louisiana, Mr. Martinez avers that the admission of venue and jurisdiction, as set forth in Mr. Anaya's petition, cannot be denied now. In support of this argument, Mr. Martinez cites Smith v. Board of Trustees of Louisiana School Employees Retirement System, 398 So.2d 1045 (La.1981), which held that "[a]n admission in a pleading falls within the scope of a judicial confession and is full proof against the party making it. Id., 398 So.2d at 1047; La. Civil Code art. 2291[8]; Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979). We agree.
*299 We find that Mr. Anaya's argument that the Louisiana court lacked jurisdiction over his person is without merit. The record establishes that Mr. Anaya voluntarily availed himself of the jurisdiction of the Louisiana court in an effort to compel Hibernia Bank to transfer money and other items of value, which were Mr. Martinez's property, over to him. However, the matter was contested by both the bank and Mr. Martinez via the filing of an answer and reconventional demand.
We agree with Mr. Martinez and conclude that Mr. Anaya's judicial confession in his petition that Mr. Martinez had requisite contacts with Louisiana is sufficient to establish that Louisiana's laws were to be applied. Mr. Anaya cannot now deny that he set forth in his petition that Mr. Martinez had significant contacts with Louisiana in the instant appeal. Therefore, based upon the our above discussion, we find that this assignment of error is also without merit.
Mr. Anaya's 6th, 7th, 8th, and 9th Assignments of Error
In his final four assignments of error, Mr. Anaya asserts: (1) the district court erred in finding that there was no final and definitive judgment from a Mexican court as to the validity of the donation; (2) that the district court erred in failing to find that Mexican law does not govern the validity of the act of donation; (3) the district court erred in failing to find that Mexican courts have exclusive jurisdiction over, and are the exclusive venue for determining the validity of the act of donation; and (4) the district court erred in finding that it had personal jurisdiction over Mr. Anaya for adjudicating the validity of the donation.
Since we have discussed the issues raised in Mr. Anaya's remaining assignments of error in our discussions of his first five assignments of error, we pretermit discussion of the remaining assignments of error.
Finally, we reiterate that there was no final judgment of a Mexican court when the Louisiana court granted the motion for summary judgment. Further, considering that the act of donation sought to be enforced was not in authentic form, the ruling by the Louisiana district court was without error.

DECREE
For the foregoing reasons, the judgment of district court is affirmed.
AFFIRMED.
NOTES
[1] An Amparo is the equivalent of an application for a supervisory writ of review.
[2] La.Code Civil Pro. art. 1841 provides:

A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled to. It may be interlocutory or final. A judgment that does not determine the merits but only a preliminary matters in the course of the action is an interlocutory judgment. A judgment that determines the merits in whole or in part as a final judgment.
[3] La.Code Civil Pro. art. 2166(E) provides:

If an application for certiorari to the supreme court is timely filed, a judgment of the court of appeal becomes final and definitive when the supreme court denies the application for certiorari. The supreme court may stay the execution of the judgment of the court of appeal pending a timely application for certiorari or an appeal to the United States Supreme Court.
[4] Mr. Anaya asserts that in reversing itself, the district court committed reversible error.
[5] The other banks to which Mr. Anaya refers are Citibank, Chase Manhattan Bank, Bank of America, Federated International Fund, and Dresdner Bank, none of which are in Louisiana.
[6] Black's Law Dictionary, 6th Ed., defines an "Apostille" as:

In French law, an addition or annotation made in the margin of a writing.
[7] La. R.S. 13:4241. Definition provides:

In this Part "foreign judgment" means any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state.
[8] The substance of Civil Code art. 2291 (1870) is contained in present Civil Code art. 1853, which was enacted by Acts 1985, No. 331, §, effective January 1, 1985.