SUSAN M. CHEHARDY, Judge.
|2On appeal, defendant challenges his conviction and sentence for armed robbery. For the following reasons, we affirm his conviction and sentence.

Facts and Procedural History

Dreams Communications, located at 3226 Williams Boulevard, is a retail store specializing in cellular telephone equipment, international money transfers, and check cashing. On January 29, 2010, Carlos Liriano, the owner of Dreams Communications, and Cicelea Torres, one of his employees, were leaving the store for the night after closing.
Liriano was carrying a backpack containing approximately $60,000 in cash, which he planned to deposit at his bank that night. Liriano locked the door to the business and turned to help Torres move the garbage bin to the street when three men appeared from “right under the stairs” of his building. Two men grabbed Torres and a third man grabbed Liriano.
Liriano testified at trial that an individual “came from right under the stairs,” grabbed him, and put a gun to his neck. He stated that, as he was being pushed toward the alleyway, the individual grabbed his backpack then hit him with a gun. | ..¡Torres testified that one of the men pressed a gun against her body as two men pushed her towards the alleyway.
Liriano believed their lives were in danger so he withdrew his firearm and shot the armed man that grabbed him and one of the other suspects.[1] Liriano kept watch for the third perpetrator and called the police.
*131 Ms. Torres stated that she heard gunshots then opened her eyes to see that one of the robbers was dead in the alleyway. When she turned around, she saw another of the robbers lying on the ground next to her. As she watched him, he took off his mask and start speaking into his phone.
On January 29, 2010, Officer Jeff Mock-lin of the Kenner Police Department responded to a call for service at Dreams Communications. Upon arrival, Officer Mocklin saw a Hispanic male speaking frantically to another police officer while “waiving around a black pistol.” After the officers secured the man’s sidearm, the man reported that three men had attempted to rob him at gunpoint. The robbery victim stated that he shot two of them, but the third one got away.
When Officer Mocklin approached the entrance of the alleyway where the incident occurred, he observed a Hispanic male lying on the ground with several gunshot wounds, “pretty much on his last breath.” Officer Mocklin observed that the wounded man still held a gun, which Officer Mocklin moved out of the man’s reach. Officer Mocklin secured the alleyway, left other officers at the scene, and went to investigate a call from dispatch that a Hispanic male wearing a sweatshirt, who fit the description of the third suspect, was seen running approximately two blocks away. After stopping the individual in question, Officer Mocklin concluded that he was not the third suspect.
|,(Detective Joseph McRae of the Kenner Police Department became the lead investigator on this case. After Detective McRae arrived on the scene at approximately 9 p.m., he determined that three individuals perpetrated the crime: Angel Hernandez, German Hernandez-Zuniga (hereinafter, “defendant”), and a third unidentified individual. At that point, Angel Hernandez had died from his gunshot wounds and the third perpetrator had escaped.[2]
More importantly to this matter, defendant had been arrested and was being transported via ambulance for medical care for his gunshot wounds. At trial, Detective McRae identified defendant as the same individual that the emergency medical technicians were treating for gunshot wounds on the night of the incident. He further testified that defendant had a mask in his possession when he was taken into custody that evening.
At trial, defendant testified that, on the day of the incident, he had a painting job, which had been cancelled due to the rain. He admitted that he was carrying a painter’s mask because he had placed a painter’s mask in the pocket of his pants for his job, just in case the rain stopped.
Defendant admitted that he walked to Dreams Communications that evening. He stated that he wanted to buy a phone card, but the store was closed when he arrived. He stated that he then heard voices and wanted to see if anyone needed help. When he walked closer, he heard gunshots. When he started to run from the gunshots, he was shot twice in the back. After he was shot, he attempted to call his girlfriend from his phone.
|sHe also admitted that he knew Angel Hernandez and Manuel Quintero because they had worked together as painters on *132 two or three prior occasions. He stated that the phone records reflected that they had called him that day to ask about work that day. Although defendant admitted that he was the individual who had been shot and taken to the hospital, he denied participating in the robbery or wearing a mask.
On April 14, 2010, the Jefferson Parish District Attorney filed a bill of information charging defendant, German A. Hernandez-Zuniga, with one count of armed robbery in violation of La. R.S. 14:64. Defendant proceeded to trial on July 20, 2010. After a two-day trial, a twelve-person jury found defendant guilty as charged. On August 16, 2010, the trial court denied defendant’s motion for new trial and sentenced him to 35 years imprisonment without benefit of parole, probation or suspension of sentence after defendant waived sentencing delays. Defendant filed a motion to reconsider sentence, which the trial court denied. This timely appeal follows.

Law and Analysis

In his only pro se and his first counseled assignment of error, defendant argues that the evidence is insufficient to uphold the conviction. Defendant specifically argues that the State failed to present sufficient proof that he was involved in the commission of the armed robbery. Defendant contends that he was “in the wrong place at the wrong time,” was mistakenly shot by a victim of the armed robbery, and incorrectly identified as one of the perpetrators.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the lacrime beyond a reasonable doubt. See State v. Ortiz, 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85, p. 4 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005) (quotation omitted).
Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841, p. 7 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. “Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts.” State v. Kempton, 01-572, p. 7 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722. “The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438.
The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83 (quotation omitted).
Under La. R.S. 14:64, armed robbery is defined as (1) a taking, (2) of anything of value, (3) from the person of or in the immediate control of another, (4) by use of force or intimidation, (5) while armed with a dangerous weapon. See *133 State v. King, 05-553 (La.App. 5 Cir. 1/31/06), 922 So.2d 1207, 1212, writ denied, 06-1084 (La.11/9/06), 941 So.2d 36. In addition to proving the statutory elements of the charged offense at trial, the State is required to prove defendant’s | identity as the perpetrator. State v. Draughn, 05-1825, p. 8 (La.1/17/07), 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007); State v. Ingram, 04-551, p. 6 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926. Where the key issue is identification, the State is required to negate any reasonable probability of misiden-tification. Draughn, supra (quotation omitted).
Defendant concedes that Liriano was the victim of an armed robbery but contends that the State failed to prove beyond a reasonable doubt that he was one of the armed robbers. Defendant argues that (1) it was too dark for the victims to identify defendant as the perpetrator, (2) some discrepancy exists between the testimony of Liriano and Torres, and (3) Liriano and Torres had an ulterior motive for claiming defendant was the perpetrator.
With respect to the victims’ ability to see the robbers’ faces, Ms. Torres did state that the alleyway was “too dark,” but, then, she responded that she recognized the defendant “[bjecause of the silhouette” and “his eyes,” which she saw after he removed his mask to speak on the telephone. Ms. Torres testified that, while he was taking off the mask, she bent down to look at him. Ms. Torres asserted that she was certain that the defendant was the same person that robbed Liriano and her in the alleyway. Finally, she stated that she did not see anyone other than Liriano, herself, and the three perpetrators while the robbery was occurring.
Liriano admitted that he did not approach defendant after shooting him, but stated that the individual he shot was the same individual placed in the back of the ambulance. When asked if there was any doubt in his mind that the person he shot and held until the police arrived was one of the two people holding Torres, he responded, “No.” When asked if there was any possibility that the person lying there and placed in the back of the ambulance just happened to walk up as he was being attacked, he responded, “No.”
|sNext, defendant contends there is a “discrepancy” between the testimony of Liriano and Torres. He notes that Torres testified that Liriano was helping her with the trash bin when three individuals came down from the second floor and grabbed them; however, Liriano testified that one individual “came from right under the stairs” and grabbed him, while the other two individuals grabbed Torres. While we are not in agreement that this presents a discrepancy regarding the perpetrators’ identities, we note that any factual discrepancy goes only to the weight of the evidence, not the sufficiency as defendant suggests. See, State v. Baker, 01-1397 (La.App. 5 Cir. 4/30/02), 816 So.2d 363, 365.
Finally, defendant suggests that Liriano and Torres had an ulterior motive for claiming defendant was the perpetrator. Defendant argues that the testimony does not reveal that he was armed and Liriano “would have likely been in some sort of trouble [if] it was discovered [that] two of his bullets hit the back of an innocent individual walking through the parking lot.”
In this case, Torres stated that the defendant was the man that grabbed her. She also recognized him because she saw his face when he took off his mask after he was shot. Clearly, the jury chose to believe the testimony of the State’s witnesses instead of the testimony of defendant. It is not the function of the appellate court to *134 second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence. State v. Stec, 99-633 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787. In this case, viewing the evidence in the light most favorable to the State, we find that a rational juror could find that the State proved beyond a reasonable doubt that defendant was one of the perpetrators of the offense. Based on the foregoing, we find that this assignment of error lacks merit.
In his second assignment of error, defendant argues that the trial court erred in imposing an excessive sentence. Defendant argues that the trial judge failed to | ^consider the criteria set forth in La. C.Cr.P. art. 894.1. The State responds that it did not invoke the firearm sentencing provision of La. R.S. 14:64.3, which would have increased defendant’s sentence by an additional five years. The State contends that defendant’s sentence is in the range approved by the Louisiana Supreme Court for first time armed robbery offenders; thus, it is not excessive.
In the instant case, although defendant filed a written motion to reconsider his sentence as excessive, defendant failed to state that the trial court erred in failing to specify reasons for the sentence pursuant to La.C.Cr.P. art. 894.1. Importantly, La.C.Cr.P. art. 881.1 provides that a defendant may file a motion to reconsider sentence, but requires the motion to set forth the specific grounds on which the motion is based. The failure to state the specific grounds on which the motion to reconsider is based precludes a defendant from raising those grounds on appeal. State v. Mims, 619 So.2d 1059 (La.1993); State v. Decay, 01-192 (La.App. 5 Cir. 9/13/01), 798 So.2d 1057, 1075, writ denied, 01-2724 (La.8/30/02), 823 So.2d 939, reconsideration denied, 01-2724 (La.12/17/02), 833 So.2d 325. Since the sole issue stated in defendant’s motion to reconsider was the excessiveness of his sentence, this Court will review for bare constitutional exces-siveness. See, State v. Wilkinson, 00-339 (La.App. 5 Cir. 10/18/00), 772 So.2d 758, 771, writ denied, 00-3161 (La.10/12/01), 799 So.2d 494.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the | inharm done to society, it shocks the sense of justice. State v. Lawson, 04-334, p. 6 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, 07-67, p. 5 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. Three factors are considered in reviewing a trial court’s sentencing discretion: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Stewart, 03-920, p. 16 (La.App. 5 Cir. 1/27/04), 866 So.2d 1016, 1027-28, writ denied, 04-449 (La.6/25/04), 876 So.2d 832.
Here, defendant was convicted by a jury of one count of armed robbery. The sentencing range for armed robbery is 10 to 99 years, to be served without benefit of *135 parole, probation or suspension of sentence. La. R.S. 14:64(B).
Before imposing sentence, the trial judge noted that, although it was defendant’s first offense, guns were used in the crime. The trial judge also stated:
[T]he victim of your crime has to live every day with the fact of knowing that he killed one of the alleged perpetrators, apparently one of your friends. And I think the crime is a worse punishment on him and the fact that he has to live with taking a man’s life to protect himself and his employee. There’s absolutely no ■ justification for the crime to which you have committed.
Defendant’s sentence of 35 years, which is in the low to middle sentencing range, is comparable to sentences imposed on similarly-situated defendants and within the 35 to 50-year range that the Louisiana Supreme Court has found acceptable for first offenders convicted of armed robbery. State v. Smith, 01-2574, p. 7 (La.1/14/03), 839 So.2d 1, 4.
In State v. Hartwell, 03-1214 (La.App. 5 Cir. 1/27/04), 866 So.2d 899, 901, writ denied, 04-0448 (La.6/25/04), 876 So.2d 832, this Court found that concurrent terms of 35 years imprisonment, plus 5 additional years for the use of a firearm, was not excessive for a 25-year-old first offender found guilty of two counts of armed robbery. Id., 03-1214, 866 So.2d at 906. In State v. Price, 04-812, p. 2 (La.App. 5 Cir. 3/1/05), 909 So.2d 612, 614, this Court found that 40 years imprisonment was not excessive for a 23-year-old first offender found guilty of armed robbery with a firearm. Id., 04-812 at 9, 909 So.2d at 617. See also, State v. Duncan, 09-232, p. 12 (La.App. 5 Cir. 11/10/09), 28 So.3d 410, 417-18; State v. Singleton, 05-634, pp. 4-6 (La.App. 5 Cir. 2/14/06), 923 So.2d 803, 806-08, writs denied, 06-1208 (La.11/17/06), 942 So.2d 532 and 08-2386 (La.1/30/09), 999 So.2d 753.
In the present case, defendant was one of three perpetrators of an armed robbery. One victim, who shot and killed one of the perpetrators, testified that he believed their lives were in danger. Based on the foregoing, defendant’s 35-year sentence for being a principal to armed robbery does not appear to be constitutionally excessive. We find no merit in this argument.
Finally, as is our routine procedure, we have reviewed the record for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors that require corrective action. Based on the foregoing, we affirm defendant’s conviction and sentence.

AFFIRMED

. Liriano has a permit to carry a concealed firearm.

. Subsequently, crime scene investigators discovered a mask and a sweatshirt, which was likely discarded by the third perpetrator, behind a restaurant next to the victim’s business. Further investigation led Detective McRae to believe that the third perpetrator was named Manuel Quintero. Phone records further revealed that several phone calls had been made between Hernandez, defendant and Quintero on the day of the armed robbery.