JUDE G. GRAVOIS, Judge.
| gDefendant, Samuel Jones, was convicted of the second degree murder of Donald Green and of being a felon in possession of a firearm. On appeal, he argues that the evidence was insufficient to convict him of second degree murder because he did not act alone. He also argues that his sentences for the two convictions are excessive in that the trial court ordered them to be served consecutively when they arose out of one course of conduct. For the following reasons, we find that defendant’s assignments of error are without merit and accordingly affirm his convictions and sentences.

PROCEDURAL HISTORY

On August 19, 2010, a Jefferson Parish grand jury indicted defendant, Samuel Jones, and a co-defendant, Troy Cryer, for the second degree murder of Donald Green, in violation of La. R.S. 14:30.1 (count one). Additionally, defendant was also charged with possession of a firearm by a convicted felon, in ^violation of La. R.S. 14:95.1 (count two). Defendant was arraigned and pleaded not guilty to both charges. Defendant and his co-defendant were severed for trial. On May 4, 2012, a 12-person jury returned verdicts of guilty as charged against defendant on both counts.
On May 11, 2012, the trial court denied defendant’s motions for post-verdict judgment of acquittal and for a new trial, and imposed sentence. On count one, the trial court sentenced defendant to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. On count two, the trial court sentenced defendant to fifteen years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence, to be served consecutively with the sentence imposed on count one. Defendant filed a motion to reconsider sentence, which the trial court denied. This timely appeal followed.

FACTS

On the night of March 23, 2008, which was Easter Sunday, defendant and his co-defendant, Troy Cryer, attacked the victim, Donald Green, in the Cryer apartment in Marrero, which was shared by co-defendant Troy Cryer, his father Charlie Cryer, and his sister Tiffany Cryer. During the botched execution of a scheme concocted by defendant and Troy to rob Green’s drug dealer “Rob,” Green was beaten and shot inside the apartment and his body was *253 transported to a nearby canal, where it was dumped and further beaten by defendant in an attempt at disfigurement to delay identification. The next day, defendant fled to Texas, where he was ultimately apprehended.
Tiffany Cryer, who was an eyewitness to some of the events of that evening, testified that she had known defendant for over six years, as he was married to her cousin. He visited often and came over on Easter Sunday, March 23, 2008. After coming and going during the day, defendant came to their apartment around 9:30 |4p.m. that evening and stayed. Defendant, Troy, Ms. Cryer, and their father Charlie were all present when Donald Green, the victim, arrived soon afterwards to get some cigarettes from Charlie. According to Ms. Cryer, Green was a neighbor, friend of the family, and a known drug user. His drug dealer, Rob, was known as a “big-time” drug dealer in the neighborhood.
After Green arrived at the apartment, defendant went outside and returned with a black semi-automatic handgun, which he pointed at Green while ordering him to get on the floor. Green expressed surprise and asked Charlie what was going on, whereupon defendant demanded Rob’s number, which Green refused to give.[1] As Green continued to refuse to give defendant Rob’s number, saying defendant “would have to kill me,” defendant started beating Green on the head with the butt of the gun. At this point, Green was on the floor, with Ms. Cryer and her father standing on one side of the scuffle and defendant and Troy, who was wearing latex gloves, on the other side. Defendant asked Ms. Cryer for something to tie Green up with, but she did not respond. When Green started to fight back, defendant then shot him in his side. Ms. Cryer and her father left the apartment at this point, went to a neighbor’s house, and called the police.
Defendant testified at trial and told a different version of the events at issue. He testified that just before Easter, he met with the Cryers and they discussed a plan to rob a neighborhood drug dealer. Defendant claimed that “Rob” was both Green’s dealer and also supplied drugs to the Cryers.[2] Defendant returned to the Cryers’ apartment several times over the next few days to further discuss the plan, which they agreed would be carried out on Easter Sunday.
| ¡-Defendant testified that on Easter Sunday, he and Ms. Cryer drove by Rob’s apartment to see if he was home so that they could carry out their plan, but because Rob was evidently having a party, they discussed executing the plan on another day. Around 10:00 p.m. that night, Green arrived at the Cryers’ apartment. Defendant claimed that Troy and Ms. Cryer passed a “look” between them and him, signaling to defendant that it was time to carry out the plan. Defendant then went outside to his Suburban, retrieved his gun, and came back inside. He said that he planned to use the gun to intimidate Green, but did not intend to shoot or kill him.
Defendant returned inside with the gun concealed in his pocket, and went to another room while the others talked. When defendant re-entered the living room with the gun, he pointed it at Green, who then asked what was going on. Charlie answered that he didn’t know, but he also *254 backed towards the front door, blocking it. Green refused to give up Rob’s number, so defendant made Green get on the floor on his stomach so he could tie him up. Defendant asked for something to tie Green up with, but no one gave him anything. At this point, defendant handed the gun to Troy and grabbed Green in an effort to restrain him. Green resisted and began to fight back. Defendant asked Troy to hit Green in the head to knock him out, whereupon Troy struck Green in the head with the butt of the gun at least two or three times, to no avail. At this point, Ms. Cryer and Charlie left the house.
As defendant and Green continued to wrestle on the floor, defendant got him in a “choker hold” where defendant was behind Green with his arms around Green’s neck. At this moment, defendant heard a gunshot and felt Green slump lifelessly. He then heard a second gunshot. Defendant asked Troy why he had shot Green, since it was not part of the plan and now they could not get Rob’s number.
| ^Defendant believed Green to be dead, so he and Troy began thinking of how to get the body out of the house without anyone seeing them. They also wanted to clean the house of blood and other evidence in case the gunshots had been heard and reported. They wrapped the body in bed sheets and put it in the front seat of •defendant’s Suburban. Defendant then drove to a nearby canal, as directed by Troy. They removed the body from the front seat and dumped it on the canal bank. Defendant decided to disfigure Green’s face in order to delay identification, because he was worried that the location was not concealed enough and the body would be discovered as soon as it was daylight. However, after hitting Green once in the face with an iron bar he had gotten from his truck, he realized that it would take many more blows to disfigure him and that he did not have the fortitude to continue. Defendant and Troy then left the body on the canal bank and returned to the apartment to clean up.
As they were cleaning up, defendant and Troy saw lights from police cars through the front windows of the apartment. Realizing that the police were focusing on the apartment, they decided to leave immediately through the back door. Defendant called a friend, who picked them up on the next street. Defendant said he tried to return about an hour later to retrieve his Suburban, but the police were still there and his truck was being towed. The two men ended up spending the night in Algiers at another friend’s house.
The next morning, defendant decided to leave the state and took a Greyhound bus to Texas. While there, he was arrested for and pleaded guilty to aggravated assault, for which he received a 45-year sentence. At the time of trial, defendant remained incarcerated in Texas on that conviction.
The Jefferson Parish Sheriffs Office investigated the incident after receiving the Cryers’ call. They went to the apartment that night and saw blood droplets 17inside the house, a bullet hole in the wall, and a projectile jacket, but no victim. A .380 caliber semi-automatic Bersa handgun was found in the backyard of the apartment. It had two live rounds in the magazine, and one spent round in the chamber, which indicated that the gun had malfunctioned at the time of use. The State’s firearms expert determined that the projectile jacket in the apartment had been fired by the Bersa pistol. Green’s body, wrapped in sheets, was discovered on the canal bank the next day by a deputy investigating the incident. An autopsy revealed blunt force trauma to Green’s head and a gunshot wound to his side, neither of which was immediately fatal, but both of which con *255 tributed to his death.[3] Defendant’s Suburban was searched (pursuant to a warrant), which revealed blood in the seat and an iron bar with blood and tissue matter on it. Subsequent DNA testing linked the Suburban and the iron bar to both defendant and Green.

ASSIGNMENT OF ERROR NO. ONE

Sufficiency of the evidence

In his first assignment of error, defendant argues that the evidence was insufficient to convict him of second degree murder. Specifically, he argues that the trial court erred in denying his post-trial motions for post-verdict judgment of acquittal and for a new trial, where he argued that the evidence was insufficient to show that he had specific intent to kill or cause great bodily harm to Green because he, defendant, did not act alone.[4]
The question of sufficiency of evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal. State v. Hooker, 05-251 (La.App. 5 Cir. 1/17/06), 921 So.2d 1066, 1074. A post-verdict judgment of acquittal 18shall be granted only if the court finds that the evidence, viewed in a light most favorable to the State, does not reasonably permit a finding of guilty. La.C.Cr.P. art. 821(B). An appellate review of the denial of the motion for post-verdict judgment of acquittal is controlled by the standards set forth in Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which is codified in La.C.Cr.P. art. 821.
Jackson states that all evidence, both direct and circumstantial, must be sufficient to support the conclusion that defendant is guilty beyond a reasonable doubt. Further, the determination of the weight of the evidence is a question of fact that rests solely with the trier of fact. State v. Upchurch, 00-1290 (La.App. 5 Cir. 1/30/01), 783 So.2d 398, 402. If there is a conflict in the testimony, the trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Addison, 00-1730 (La.App. 5 Cir. 5/16/01), 788 So.2d 608, 613, writ denied, 01-1660 (La.4/26/02), 814 So.2d 549. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to convict. Id.
A motion for a new trial is based on the supposition that injustice has been done the defendant, and unless such is shown to have been the case, the motion shall be denied, no matter upon what allegations it is grounded. La.C.Cr.P. art. 851. The decision on a motion for a new trial rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear abuse of discretion. State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 784, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866. When a motion for a new trial is based on the verdict being contrary to the law and the evidence, pursuant to La. C.Cr.P. art. 851(1), courts have addressed the constitutional issue of the sufficiency of the evidence. State v. Lyles, 03-141 (La.App. 5 Cir. 9/16/03), 858 So.2d 35, 50.
|9Under the Jackson standard, a review of the record for sufficiency of the *256 evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 284, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id. It is not the function of the appellate court to second guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on fundamental due process of law. Id.
Defendant was convicted of second degree murder, which is defined as the killing of a human being when the offender: (1) has specific intent to kill or to inflict great bodily harm; or (2) is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, even though he has no intent to kill or inflict great bodily harm. La. R.S. 14:30.1.[5] Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. State v. Martinez, 09-740 (La.App. 5 Cir. 3/23/10), 38 So.3d 926, 932. Specific intent, as a state of mind, need not be proven as fact, but may be inferred from the circumstances and the acts of the accused. Id.; State v. Jackson, 03-883 (La.App. 5 Cir. 4/27/04), 880 So.2d 841, 849-50, writ denied, 04-1399 (La.11/8/04), 885 So.2d 1118 (citation omitted).
Principals are defined as “all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly [incounsel or procure another to commit the crime.” State v. Massey, 11-357 (La.App. 5 Cir. 3/27/12), 91 So.3d 453, 463, wiit denied sub nom., State ex rel. Massey v. State, 12-0991 (La.9/21/12), 98 So.3d 332 (citing La. R.S. 14:24). Mere presence at the scene of the crime does not make one a principal to the crime. Id. Only those persons who “knowingly participate in the planning or execution of a crime” are principals to that crime. Id. A principal may be connected to only those crimes for which he has the requisite mental state. Id. at 464.
The trial court was presented with two different versions of events: Ms. Cryer’s version, which identified defendant as the shooter; and defendant’s version, which alleges that Troy, not him, was the shooter, and further implicates the whole Cryer family as accomplices. In all other respects, the versions are not significantly in conflict. In both versions, defendant concocts the scheme to rob Rob with, at the very least, Troy Cryer’s participation. Defendant gets his gun to intimidate Green, orders Green to the floor, orders Green to tell him Rob’s number, and attempts to tie Green up when he resists. In his version, defendant orders Troy to beat Green on the head with the gun butt in order to render him unconscious, while in Ms. Cryer’s version, defendant beats Green on the head himself.
At this point, Green is shot, either by defendant or Troy. Ms. Cryer testified that she witnessed the shooting; defendant alleges that she left the apartment before the shooting. Because Ms. Cryer left the apartment at this point, defendant alone described what happened next. Defendant and Troy planned to clean the apartment of evidence of the crime and *257 dispose of the body. After using defendant’s vehicle to dump the body, defendant admitted it was he who had the idea of disfiguring Green’s face, and in fact started to do so with the iron bar from his vehicle. Finally, upon seeing the police approach the apartment while they were insideJjjcleaning up, defendant fled the scene, and ultimately the state, in order to elude responsibility.
We find no error or abuse of discretion in the trial court’s denials of the post-verdict motion for acquittal and the motion for a new trial. A review of the record does not show under what theory of second degree murder the State prosecuted defendant.[6] The record does not reflect which version the jury believed. Ms. Cryer, an eyewitness, testified that defendant shot the victim. Positive identification by only one witness is sufficient to support a conviction.[7] State v. Williams, 08-272 (La.App. 5 Cir. 12/16/08), 3 So.3d 526, 529, writ denied, 09-0143 (La.10/16/09), 19 So.3d 470. Even assuming arguendo that the jury accepted defendant’s version, the evidence of defendant’s guilt is overwhelming. Defendant produced the gun that was used to shoot Green, either ordered Troy to beat Green or did it himself, either shot Green or had Green in a stranglehold while Troy shot him, planned and participated in the attempt to cover up the crime, dumped Green’s body in a remote location, and tried to disfigure his corpse, all before fleeing the state to elude capture.[8] Even under his version of events, defendant acted with specific intent to, at the very least, cause great bodily harm to Green at several different points during the incident. Further, Green was killed as part of a scheme to commit a robbery, which qualifies as an enumerated felony as per La. R.S. 14:30.1(2).
| ^Defendant’s brief acknowledges the law of principals, but disregards it after arguing that the evidence of specific intent was insufficient because defendant did not act alone. This position has no merit. In State v. Page, 08-531 (La.App. 5 Cir. 11/10/09), 28 So.3d 442, 449-450, writ denied, 09-2684 (La.6/4/10), 38 So.3d 299, this Court found sufficient evidence of second degree murder under the law of principals, where the defendant, who maintained that he was not the shooter, remained with his co-defendant at the scene, did nothing to prevent the crime, fled the scene rather than coming to the victim’s aid, and did not attempt to report the shooting.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. TWO

Excessive ness of sentence

In his second assignment of error, defendant argues that his life sen *258 tence for second degree murder and his fifteen-year sentence for possession of a firearm by a convicted felon are excessive because they were imposed consecutively.[9]
This Court has held that the failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Hunter, 10-552 (La.App. 5 Cir. 1/11/11), 59 So.3d 1270, 1272. This Court has also held that when the consecutive nature of sentences is not specifically raised in the trial court, the issue is not included in the bare constitutional excessiveness review, and the defendant is precluded from raising the issue on appeal. State v. Escobar-Rivera, 11-496 (La.App. 5 Cir. 1/24/12), 90 So.3d 1, 8, writ denied, 12-0409 (La.5/25/12), 90 So.3d 411.
| isln the instant case, defendant filed a motion to reconsider sentence wherein he asserted that his sentences were unconstitutionally excessive, but did not specifically object to the consecutive nature of the sentences. Accordingly, he is not entitled to a review of the consecutive nature of his sentences on appeal, but is limited to a constitutional excessiveness inquiry. Id. Defendant did not, however, argue in brief that the individual sentences themselves were excessive other than they should not have been imposed consecutively because they arose from one course of conduct and defendant was not the worst of offenders. The record shows, however, that defendant is a violent recidivist, having both past and subsequent convictions for crimes of violence.[10] ■
This assignment of error is without merit.

ERRORS PATENT REVIEW

The record was reviewed for errors patent according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We find no errors patent requiring correction.

CONCLUSION

For the foregoing reasons, defendant’s convictions and sentences are affirmed.

AFFIRMED

. At trial, Ms. Cryer surmised that defendant wanted Rob's telephone number from Green in order to facilitate robbing him.

. Defendant claimed that both Charlie and Troy used cocaine and marijuana supplied by Rob. He claimed to have seen Ms. Cryer use marijuana but not any other drugs.

. The medical examiner testified that Green was still alive on the canal bank when defendant hit him in the face with the iron bar.

. In defendant’s motions for post-verdict judgment of acquittal and a new trial, he references both of his convictions. However, on appeal, he argues only that the evidence was insufficient to support his second degree murder conviction. Accordingly, we will only address the sufficiency of the evidence regarding the murder conviction.

. The enumerated felonies are aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, assault by drive-by shooting, armed robbery, first degree robbery, second degree robbery, simple robbery, cruelty to juveniles, second degree cruelty to juveniles, and terrorism.

.Opening and closing statements, as well as jury instructions, were not transcribed. However, courts have held that a lack of transcripts of the opening statements, closing arguments, and jury instructions did not render the trial record inadequate for full appellate review of defendant’s conviction, in light of fact that missing portions of record did not concern evidentiary matters, and in light of minute entries indicating defendant did not make any objections during missing portions of trial. State v. Hawkins, 90-1235 (La.App. 4 Cir. 9/15/95), 667 So.2d 1070, rehearing denied, writ granted, 96-0766 (La.9/13/96), 679 So.2d 97, affirmed, 96-0766 (La.1/14/97), 688 So.2d 473; La.C.Cr.P. art. 843.

. On cross-examination, Ms. Cryer denied that she would lie to protect or help her brother, who was also charged in this crime.

. Defendant’s flight and attempt to, avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. State v. Gant, 06-232 (La.App. 5 Cir. 9/26/06), 942 So.2d 1099, 1111, writ denied, 06-2529 (La.5/4/07), 956 So.2d 599.

. Defendant did not argue that each sentence separately was excessive.

. Defendant had previous convictions of simple escape, two counts of armed robbery, and second degree kidnapping, as noted in the record. Additionally, at the time of trial, defendant was incarcerated on an aggravated assault conviction in Texas. La. R.S. 14:2(B)(7), (16), and (21) define aggravated assault, second degree kidnapping, and armed robbery, respectively, as crimes of violence.