MARC E. JOHNSON, Judge.
| ^Defendant, Willie Franklin, appeals his convictions and sentences for armed robbery and possession of a stolen thing on the basis of insufficient evidence regarding his identity as the perpetrator of the crime, failure of the trial court to give a special jury instruction regarding lost evidence, and the excessiveness of his consecutive sentences. For the reasons that follow, we affirm his convictions and sentences for armed robbery and vacate his conviction and sentence for illegal possession of a stolen thing.
Defendant was charged in a bill of information with two counts of armed robbery in violation of La. R.S. 14:64 and one count of illegal possession of a stolen thing valued over $500.00 in violation of La. R.S. 14:69.[1] He pled not guilty and filed several pre-trial motions, including motions to suppress identification and |shis statements, which were denied after a hearing. Defendant proceeded to trial on April 10, 2013. After a three-day trial, a 12-person jury found him guilty as charged on all three counts. The trial court subsequently sentenced Defendant to 50 years imprisonment without the benefit of parole, probation or suspension of sentence on each of the two armed robbery convictions and ten years for his illegal possession of a stolen thing conviction. The trial court ordered the sentences to run consecutively to each other.[2]

FACTS

At approximately 11:00 p.m. on August 17, 2010, Lindsay Conaway returned home after grocery shopping to an apartment complex on Edenborn in Metairie where she lived with her father. As she was *299 getting things off the passenger seat of her Pontiac G-6, she felt something small pointing into the back of her neck and heard, “Give me your money.” She turned around and saw two men in front of her, one of whom was pointing a revolver at her. When Ms. Conaway stated that she had no money, the man with the gun took her cell phone and the other man, who Ms. Conaway later identified as Defendant, got into her car and tried to back it up. Ms. Conaway’s father, whom she had previously identified to the perpetrators as a police officer, started coming down the apartment stairs at which time the man with the gun ran away with Ms. Conaway’s cell phone and a grocery bag while Defendant exited the vehicle and ran in the opposite direction. Ms. Conaway’s father immediately called 911 and reported the robbery.
A few minutes later, at approximately 11:13 p.m., Deputy Anthony Buttone, with the Jefferson Parish Sheriffs Office, responded to the 911 call. He spoke to Ms. Conaway, who gave a description of the two men. She described the gunman as being 5'6", 165 pounds, wearing all black and a white baseball cap, and the man [4who got into her car as being 6'0" to 6'2" with a bald or shaved head, weighing approximately 265 pounds, and wearing black shorts and a black t-shirt.
About ten minutes later, at 11:23 p.m., Defendant was stopped by a police officer nearby on Division St. as a suspicious person because he matched the description of one of the armed robbery suspects, which was an older black male wearing dark colored clothing. Defendant was wearing black jeans and a black t-shirt when he was stopped. The officer completed a field interview card but did not detain Defendant because he was very calm, lived in the area, and explained that he was walking back to his residence from a nearby convenience store.
Approximately two hours later, around 1:15 a.m., Kelly Barrera arrived home to her apartment complex on Division St., two blocks away from Edenborn. When she exited her car, a man walked up to her and put a gun to her forehead. The man demanded everything she had and threatened to kill her. Ms. Barrera put everything she had on a car, after which the man ordered her to lie flat on the ground. Ms. Barrera saw the man’s feet walk away and towards her car, a 2002 Toyota Canary. She then heard her car start and saw the brake lights of her car as it disappeared. Ms. Barrera waited a few seconds, ran upstairs to her apartment, and told her fiancée what happened. Her fian-cée then called 911 and relayed a description of the perpetrator.
Throughout the entire ordeal, Ms. Barrera only saw one person, whom she later identified in a photographic lineup as co-defendant, Manuel Clark. She explained at trial that she subsequently learned two people had been arrested for the robbery, one of whom was Defendant. Ms. Barrera testified that she knew Defendant because he lived near her for the past two years in the same apartment complex. Ms. Barrera stated that she did not see Defendant on the night she was robbed.
|¡iOn the afternoon of the robbery, at approximately 5:30 p.m., Ms. Barrera’s fi-ancée, Stephan Howard, was on his way to work when he saw Ms. Barrera’s Camry. He called 911 and proceeded to follow the vehicle. While following the car, Mr. Howard saw a police unit and told the officer that the car had been stolen. The officer stopped the vehicle and detained the driver, whom Mr. Howard recognized and later identified as Defendant. Defendant told the officer that a white girl had given him the car; however, shortly thereafter, the officer received information via radio that the car was involved in a car *300 jacking at which time he placed Defendant under arrest.
Meanwhile, Detective Cedric Gray had been investigating the first armed robbery of Ms. Conaway on Edenborn. Shortly after the robbery, he met with Ms. Cona-way at the scene. Detective Gray developed Defendant as a suspect in the first armed robbery after he learned Defendant had been stopped in the area right after the robbery because he matched the description of one of the perpetrators. Detective Gray prepared a photographic lineup with Defendant’s photograph and showed it to Ms. Conaway the next afternoon at 5:30 p.m. Ms. Conaway immediately identified Defendant as the man who entered her car. Thereafter, Detective Gray obtained an arrest warrant for Defendant and a search warrant for his residence. Execution of the search warrant yielded a black t-shirt and black pants.
After his arrest, Defendant gave three statements after being advised of and waiving his rights. He gave his first statement at 8:18 p.m., specifically in reference to the second armed robbery on Division St. Defendant stated that Manuel Clark came to his apartment around 9:30 p.m. the previous night to hang out. The two walked to a nearby Circle K convenience store and then returned to the parking lot of Defendant’s apartment complex. According to Defendant, Clark |fileft while Defendant went inside his apartment. Clark later called Defendant’s cell phone and told him to come outside where Clark was driving a dark colored car that Clark indicated belonged to his girl. The two then drove around the city. Defendant explained that at some point, Clark told Defendant he could take the car, which he did and was later stopped by the police.
Defendant gave a second statement at 9:53 p.m., which was specifically in reference to the first armed robbery on Eden-born. In his second statement, Defendant admitted being with Clark on Edenborn at 11:10 p.m. when Clark pulled a pistol on a girl and tried to rob her, but Defendant said he had nothing to do with it. He denied saying anything to the victim, taking anything from her, or getting inside her car. Defendant explained Clark ran while he walked away when the girl’s father came down the stairs.
Defendant gave a final statement at 11:48 p.m., in reference to the second armed robbery on Division St. In this third statement, Defendant admitted being with Clark at the Division St. apartment complex when Clark robbed a lady of her car while armed with a pistol, but claimed he did not know Clark was going rob anyone. Defendant explained he was 10-15 feet away from Clark when Clark walked up to the lady and pointed a gun at her, at which time she gave Clark the keys to the car. Defendant watched Clark get into the car and drive away. Defendant met up with Clark 20 minutes later when Clark came back to the complex and Defendant got into the stolen car, and the two drove around the city.

\ .DISCUSSION

Sufficiency of Evidence

Defendant challenges his conviction for the armed robbery of Kelley Barrera on Division St., claiming the evidence was insufficient to prove his identity as the perpetrator of the offense. Specifically, Defendant argues Ms. Barrera only saw one robber and identified that person as Manuel Clark. Defendant further asserts that he did not know Clark was going to rob anyone and that once Clark drove away in the car, he walked away.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, *301 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing all evidence, both direct and circumstantial, in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97); 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
Armed robbery is defined as (1) a taking, (2) of anything of value, (3) from the person of or in the immediate control of another, (4) by use of force or intimidation, (5) while armed with a dangerous weapon. La. R.S. 14:64; State v. Hernandez-Zuniga, 11-378 (La.App. 5 Cir. 12/13/11); 81 So.3d 129, 132, writ denied, 12-28 (La.4/20/12); 85 So.3d 1268. In addition to proving the statutory elements of the charged offense at trial, the State is required to prove a defendant’s identity as the perpetrator. State v. Draughn, 05-1825 (La. 1/17/07); 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007).
La. R.S. 14:24 provides that all persons concerned in the commission of a crime, whether present or absent, and whether he directly commits the offense, aids and abets in its commission, or directly or indirectly counsels or procures another |sto commit the crime, are principals. A principal is liable just as the person who directly commits the crime. State v. Falkins, 04-250 (La.App. 5 Cir. 7/27/04); 880 So.2d 903, 913, writ denied, 04-2220 (La.1/14/05); 889 So.2d 266, and writ denied sub nom. State ex rel. Simms v. State, 04-2171 (La.5/20/05); 902 So.2d 1045.
Only those persons who knowingly participate in the planning or execution of a crime are principals to that crime. An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state, and the mental state of one defendant may not be imputed to another defendant. Thus, mere presence at the scene of a crime does not make one a principal to the crime. However, it is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice’s intention. State v. Petty, 12-278 (La.App. 5 Cir. 10/30/12); 103 So.3d 616, 623. Though intent is a question of fact, it may be inferred from the circumstances. Falkins, supra.
Armed robbery is a general intent crime. General intent is sufficient and is present “when circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.” La. R.S. 14:10(2). An offender has the requisite intent when “from the circumstances the prohibited result may reasonably be expected to follow from the offender’s voluntary act, irrespective of any subjective desire on his part to have accomplished such result.” State v. Smith, 07-2028 (La.10/20/09); 23 So.3d 291, 297-98.
 The state may prove a defendant guilty by showing that he served as a principal to the crime by aiding another. Under this theory, the defendant need not factually take anything to be found guilty of the crime of armed robbery. State v. Womack, 47,639 (La.App. 2 Cir. 1/16/13); 109 So.3d 418, 424, writ denied, 13-304 (La.9/20/13); 123 So.3d 163. Additionally, a defendant convicted as a principal to armed robbery need not have personally held a weapon to be guilty. Id.
*302 Defendant first argues that the State failed to prove his identity as the perpetrator of the armed robbery of Ms. Barrera because she testified that there was only one perpetrator, whom she identified as Clark. However, Defendant admitted in his own statement that he was present with Clark, standing only 10-15 feet away, at the time Clark robbed Ms. Barrera of her car.
Defendant next argues that he had no knowledge that Clark was going to rob Ms. Barrera and that his mere presence at the scene is insufficient to make him a principal to the armed robbery. We find the record sufficiently shows that the fact finders could have reasonably believed that Defendant knew Clark was going to rob Ms. Barrera and that Defendant sufficiently participated in the offense so as to be guilty as a principal.
In State v. Saylor, 01-451 (La.App. 5 Cir. 11/27/01); 802 So.2d 937, writ denied, 01-3406 (La. 10/4/02); 826 So.2d 1122, this Court upheld the defendant’s armed robbery conviction as a principal when he took no actions to prevent the robbery, which occurred in his presence, and he did not leave the scene until his accomplice was safely back in the car. This Court explained that the jury could have reasonably inferred the defendant had the requisite intent to commit the crime in that he aided in its commission by acting as the lookout and driver of the get-away car.
In the present case, the record shows Defendant participated in an armed robbery with Clark only two hours before the robbery of Ms. Barrera. In the first | inrobbery, Defendant unsuccessfully attempted to take the victim’s car after Clark held the victim at gunpoint. During the robbery of Ms. Barrera, Defendant admitted he was only 10-15 feet away from Clark when Clark approached the victim and pointed a gun at her. Defendant stood by while Clark obtained the victim’s keys at gunpoint. He waited until Clark drove away before he walked away from the scene. He then joined Clark in the stolen vehicle 20 minutes later and the two drove around the city. After dropping Clark off, Defendant continued to drive Ms. Barrera’s vehicle until he was apprehended by Kenner police.
We find this evidence was sufficient for the jury to reasonably infer that Defendant had the requisite intent to commit armed robbery and aided in its commission by standing by and acting as a lookout. Defendant had been with Clark for several hours prior to the robbery of Ms. Barrera and had participated in the armed robbery of another victim two hours earlier. He stood by during the robbery of Ms. Barrera and did nothing to prevent it. He did not leave the scene until Clark had successfully obtained the victim’s car, and instead of attempting to call the police or aid the victim, he joined Clark in the stolen car within a few minutes of the robbery.
Accordingly, we find the evidence, when considered in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Defendant was guilty of being a principal to armed robbery.

Special Jury Charge

Defendant argues the trial court erred in failing to give the jury a special jury charge regarding the lost audio tape of his second recorded statement. Defendant contends the jury should have been instructed that there is a presumption that any |nevidence lost or destroyed while in the State’s control would be beneficial to the defendant.
During trial, several State witnesses testified that the microcassette tape of Defendant’s second recorded statement, taken by Detective Cedric Gray on August 18, *303 2010, could not be located. Detective Gray testified that after taking Defendant’s statement, he placed the tape on the secretary’s desk for transcription. Lyndi Kim-ble, a transcription secretary with the Jefferson Parish Sheriffs Office, testified that she transcribed the statement at issue. Detective Gray stated that he reviewed the transcript for inaccuracies and found none. He testified that State’s Exhibit 89 was an accurate reflection of what was on the tape.
During trial, Defendant filed a written motion for special jury instructions pursuant to La.C.Cr.P. art. 807, seeking to have the trial court charge the jury with the following:
DESTRUCTION OR FAILURE TO PRESERVE EVIDENCE.
When evidence is under the control of the State of Louisiana and is destroyed, not preserved or not otherwise made available for production to the defendant, it should be presumed that said evidence would have been favorable to the defendant. Thus, if you find that certain evidence was under the control of the Jefferson Parish Sheriffs Department or the Jefferson Parish District Attorney and that said evidence was destroyed, not preserved or not otherwise made available for production to the defendant, you should presume that said evidence would have been favorable to the defendant in this case.
At a charge conference before closing arguments, the trial court denied the motion. The trial court noted that the missing tape was transcribed in the normal course and scope of the investigation and that the transcriptionist and investigating officer found no inaccuracies after checking the transcript against the tape. The trial court further noted that the accuracy of the transcript of the missing microcassette tape was not in question. The trial court concluded that Defendant was not entitled to the presumption he sought. It further found the proposed instruction would only | ^confuse the jury by suggesting the transcript of the tape was inaccurate when two witnesses testified as to its accuracy.
The trial court is required to charge the jury as to the law applicable to the case. La.C.Cr.P. art. 802. Under La. C.Cr.P. art. 807, a requested special jury charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent. The special charge need not be given if it is included in the general charge or in another special charge to be given. State v. Thomas, 10-220 (La.App. 5 Cir. 11/9/10); 54 So.3d 678, 686, writs denied, 10-2758 (La.4/25/11); 62 So.3d 89 and 10-2752 (La.5/20/11); 63 So.3d 974. Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. Id.
We find no error in the trial court’s refusal to give the requested special charge because it was not wholly correct or pertinent in the present case. Defendant’s special jury request was based on the theory of spoliation of evidence, which is the intentional destruction of evidence for the purpose of depriving the opposing party of its use. As explained in State v. Goosby, 47,772 (La.App. 2 Cir. 3/6/13); 111 So.3d 494, 503, writ denied, 13-760 (La.11/1/13); 125 So.3d 418,
Spoliation creates a presumption that the evidence was destroyed because it would have been detrimental to one’s case. The presumption of spoliation is not applicable when failure to produce the evidence is adequately explained. It is generally utilized in civil litigation. In *304 criminal cases, a defendant is not deprived of his due process rights based on the state’s failure to preserve potentially exculpatory evidentiary material unless bad faith is demonstrated. To receive the adverse inference, both destruction of evidence and bad faith is required. [Internal citation omitted.]
Defendant does not claim the microcas-sette tape contained exculpatory evidence or that it contained any statements other than those that appear in the transcript of the audio tape. Further, the State explained that the tape was not [ ^produced at trial because it had been lost; however, the tape had been transcribed before it was lost, and the State offered two witnesses to show the accuracy of the transcription. Defendant does not deny that he gave a statement to Detective Gray in which he implicated himself in the armed robbery of Ms. Conaway. Thus, we find the requested jury charge was not wholly correct or applicable to Defendant’s case, and that the trial court properly denied Defendant’s request to give it.

Excessiveness of Consecutive Sentences

Defendant contends the trial court erred in imposing consecutive sentences, which total 110 years imprisonment, without specifying reasons. Defendant argues that the consecutive nature of his sentences render them unconstitutionally excessive.
The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Jones, 12-750 (La.App. 5 Cir. 5/16/13); 119 So.3d 250, 258. Further, when the consecutive nature of sentences is not specifically raised in the trial court, the issue is not included in the bare constitutional excessiveness review, and the defendant is precluded from raising the issue on appeal. Id.
The record reflects thát Defendant orally objected to his sentences, but failed to state any grounds for his objection. Further, although he indicated at the time of his objection that he would file a motion to reconsider sentence, he never did so. At no time did Defendant object to his sentences in the trial court on the basis of their consecutive nature. Accordingly, Defendant is not entitled to a review of the consecutive nature of his sentences on appeal, but is limited to a review of his sentences for constitutional excessiveness. Jones, supra.
114The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574 (La.1/14/03); 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992).
A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent an abuse of that discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Hernandez-Zuniga, 81 So.3d at 134.
Defendant was sentenced to 50 years on each of his armed robbery convictions.[3] The sentencing range for armed *305 robbery is ten to 99 years; thus, Defendant received a mid-range sentence on each conviction. La. R.S. 14:64(B). We do not find Defendant’s sentences grossly disproportionate to the crimes committed, and the sentences do not shock our sense of justice.
We note that similar sentences for armed robbery convictions where the defendant is convicted as principal range from 35 to 50 years. In State v. Hernandez-Zuniga, 81 So.3d at 135, this Court found the defendant’s 35-year sentence for being a principal to armed robbery was not constitutionally excessive. In State v. Womack, 47,639 (La.App. 2 Cir. 1/16/13); 109 So.3d 418, 426, writ denied, 13-304 (La.9/20/13); 123 So.3d 163, the Second Circuit held that the defendant’s 50-year sentence for being a principal to armed robbery was not | ^constitutionally excessive. Additionally, in State v. Bridges, 09-886 (La.App. 1 Cir. 10/27/09), [2009 WL 3447424] (unpublished opinion), writ denied, 09-2490 (La.4/23/10), 34 So.3d 269, the First Circuit concluded that a 50-year sentence for being a principal to armed robbery was not constitutionally excessive.
Based on the foregoing, we do not find Defendant’s 50-year sentences on each of his armed robbery convictions to be constitutionally excessive nor can we say the trial court abused its wide discretion in imposing such sentences.

ERRORS PATENT

Pursuant to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990), we conducted an error patent review of the record and find Defendant’s convictions for both armed robbery (count two) and possession of the thing stolen during the robbery (count three) violate his right against double jeopardy.
The Double Jeopardy Clauses of the federal and Louisiana constitutions not only prohibit successive trials for the same offense, but also protect against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); State v. Murray, 00-1258 (La.9/18/01); 799 So.2d 453, 455.
A defendant may be charged in the same indictment for theft, or a crime of which theft is an essential element, and for receiving stolen things; however, a defendant may only be found guilty of either of the offenses charged. The State is not required to choose between the two offenses charged, but a defendant cannot be found guilty of both offenses. La.C.Cr.P. art. 482(A); State v. Robertson, 386 So.2d 906, 908 (La.1980).
|1fiIn the present case, the trial judge failed to instruct the jury that it could only convict Defendant of either the armed robbery of Ms. Barrera or illegal possession of a stolen thing, but not both. Defendant was ultimately convicted of both offenses, thereby violating his right against double jeopardy, a fact to which the State concedes in its appellee brief. See State v. Peden, 04-71 (La.App. 5 Cir. 5/26/04); 875 So.2d 934, 948-49, where this Court recognized in an error patent review that the defendant’s convictions for armed robbery and possession of the car taken in the robbery constituted a double jeopardy violation.
Where multiple punishments have been imposed in violation of double jeopar *306 dy, the remedy is for the reviewing court to vacate the conviction and sentence of the less severely punishable offense and affirm the conviction and sentence for the more severely punishable offense. State v. Dixon, 96-407 (La.App. 5 Cir. 11/26/96); 685 So.2d 310, 313. Accordingly, we vacate Defendant’s conviction and sentence for illegal possession of a stolen thing, which is the less severely punishable offense.
Additionally, we find the trial court failed to advise Defendant of the two-year time period for filing an application for post-conviction relief as required by La.C.Cr.P. art. 930.8. Although the commitment indicates the trial court advised Defendant of the prescriptive period for seeking post-conviction relief, the transcript is completely devoid of any such advisal. Where there is a discrepancy between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). As such, we advise Defendant, by this opinion, that no application for post-conviction relief shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922. See State v. Casimer, 12-678 (La.App. 5 Cir. 3/13/13); 113 So.3d 1129,1143.

\ ^DECREE

Defendant’s convictions and sentences for his two armed robbery convictions are affirmed. His conviction and sentence for illegal possession of a stolen thing are vacated because they violate Defendant’s right against double jeopardy.

ARMED ROBBERY CONVICTIONS AND SENTENCES AFFIRMED; CONVICTION AND SENTENCE FOR ILLEGAL POSSESSION OF A STOLEN THING VACATED.

. The bill of information also charged co-defendant Manuel Clark with two counts of armed robbery. Defendants were severed for purposes of trial.

. On the same day Defendant was sentenced, the State filed a multiple offender bill of information alleging Defendant to be a second felony offender, but later dismissed it.

. Because we must vacate Defendant's conviction for illegal possession of a stolen thing, *305 as discussed infra in our errors patent review, we need not review Defendant’s 10-year sentence for said conviction for excessiveness.